# CHARLESTON.

COLLINS *and* DAUGHERTY *v.* SHERWOOD.

Submitted January 31, 1901.  Decided November 23, 1901.

1. PARTITION—*Tax Deed—Affirmative Relief.*

    In a suit for partition of land, brought by one claiming under an invalid tax-deed, the defendant may allege in his answer, as new matter, constituting a claim for affirmative relief, the defects in said tax sale and deed, and ask that the same be set aside, and such relief may be granted in such suit.  (p. 147).

2. TAX SALES—*Curative Statutes.*

    The curative provisions of section 25 of chapter 31 of the Code are not retroactive in their operation, and, therefore, they only apply to tax sales made after they were passed.  (p. 145).

3. TAX SALE—*Adjournment.*

    Section 7, chapter 31, Code of 1868, provided that, if the taxes interest, damages and commissions on delinquent lands certified to the sheriff for sale, were not paid previous to the day fixed by law for the sale of the land, "the said sheriff or collector shall proceed to make sale accordingly; and if the same be not completed on the first day, it shall be continued from day to day (Sundays excepted), between the hours aforesaid, until it shall be completed."  The sheriff of R. County began his sale of such lands December 2, 1871, and then adjourned until January 9, 1872, made no sales between said dates, and completed his sales on said last named date.  *Held,* that the adjournment was unauthorized and invalidates the sale and a deed made in pursuance thereof, it being such an irregularity ap-

pearing of record as was calculated to materially prejudicate the right of the owners.  (p. 141).

4.  TAX SALE—*Purchaser—Delinquent Return.*

In 1871, H., L. & R. jointly purchased a tract of land at a tax sale, and a deed was made to him in pursuance thereof. H. paid none of the purchase money, and L. & R. permitted the land to be returned delinquent and sold again for the taxes for subsequent year, and purchased it. For another year, still later, the land was again sold and purchased by the State. The land was assessed in the names of H., L. & R. until 1880, when it was entered on the land books and assessed in the names of persons claiming under L. & R. and continued to be so assessed down to, and including the year 1897, and the taxes were paid by persons so claiming. *Held,* by section 3 of article XIII. Constitution, the title is vested in the persons claiming through and under L. & R.  (p. 146).

5.  TAX SALE—*Purchase Money—Deed.*

When tne holder of an invalid tax deed and those under whom he claims, have paid no purchase money, taxes or costs under, or in procuring, the same, the person entitled to have the deed set aside need not tender or pay him anything, or offer to do so, in attacking such deed.  (p. 148).

Appeal from Circuit Court, Ritchie County.

Bill by Creed Collins and Jacob Daugherty against W. H. Sherwood.  Decree for plaintiff.  Defendant appeals.

*Reversed.*

MERRICK & SMITH, for appellant.

THOS. E. DAVIS, for appellee.

POFFENBARGER, 'JUDGE :

This suit was brought in the circuit court of Ritchie County at August rules, 1892, by Creed Collins and Jacob Daugherty against W. H. Sherwood for partition of a tract of land containing eight hundred and fifty-nine and one-half acres of which the plaintiffs claim to be the owners of one-third. They derive their claim of title from M. M. Hitchcox. On December 2, 1871, the tract of land was sold as delinquent for the non-payment of taxes for the year 1870, charged in the name of A. N. Wiliams, and Hitchcox and two other persons, W. Lambert and J. P. Rogers, became the purchasers and G. W. Amos, clerk of the county court of the said county, made a deed bearing date

September 29, 1873, conveying the land to them. Hitchcox failed to pay his share of the purchase money, and the land was permitted to become delinquent and be sold again, June 8, 1874, for non-payment of taxes for 1872, charged in the name of the Williams estate, and was bought at this sale by Lambert. By a deed dated June 7, 1875, Lambert and Rogers conveyed the land, with covenant of special warranty, to W. F. Atkisson and S. H. Piersol. By deed dated July 7, 1875, the heirs of A. N. Williams conveyed the land to Atkisson and Peirsol with covenant of special warranty. By deed dated July 25, 1877, G. W. Amos, clerk of the county court of Ritchie County, conveyed the land to Atkisson and Peirsol in pursuance of the purchase made by Lambert at the tax sale of June, 1874, and Lambert joined in this deed, having assigned his interest under said purchase to the grantees. By a deed dated December 2, 1881, Atkisson and Peirsol and O. M. Brown and wife, conveyed the land to William H. Sherwood & Co. It is claimed that the original deed from the Williams heirs was dated July 7, 1874, and was lost, after delivery and before it was admitted to record, and was replaced by the deed made by the said heirs July 7, 1875. These are the evidences of title presented by Sherwood, the defendant, who claims the whole tract of land and denies the right of plaintiffs to have partition. In addition to this he insists that if Collins and Daugherty ever had any title to the land under their purchase at tax sale made by Hitchcox, Lambert and Rogers, as holding the interest of said Hitchcox in said purchase, they have lost it by their failure to have the land or any interest in it assessed with taxes in their name or in the names of any one under whom they claim, and that from 1877 to 1889, inclusive, neither the land nor any interest therein was assessed to the plaintiffs or any person under whom they claim, while, on the other hand, beginning with the year 1877, the whole of the tract of land was taxed in the name of W. H. Sherwood, or those under whom he claims, down to the time of the institution of this suit.

The plaintiffs allege in their bill that Hitchcox, by virtue of the purchase made by him, Lambert and others, became the owner of the undivided one-third of the land; that, he having departed this life, a chancery suit was brought in which his interest in the land was sold; that A. S. Core became the pur-

chaser, and a deed was made to him as such purchaser by R. S. Blair, special commissioner, dated February 8, 1881; that afterwards Core's interest in the land was decreed to be sold and at the sale was purchased by the plaintiff, Creed Collins, and a deed was made to him by Thomas E. Davis, special commissioner, dated December 26, 1888; and that Collins then conveyed the undivided one-half of his interest in the land to Daugherty, his co-plaintiff, by a deed dated July 7, 1892.

A stipulation was filed in this cause to be considered in lieu of proof, respecting the proceedings by which Hitchcox's interest in the land was obtained by Collins, and its provisions are as follows:

1. Suit was pending in the circuit court of Ritchie County, West Virginia, against M. M. Hitchcox, in which suit H. Rosenheim was plaintiff, to sell the real estate of said Hitchcox, to satisfy his debts, at the time of his death, which occurred after the Ocober term, 1873, and before the 1st day of May, 1874.

2. That on the 1st day of May, 1874, the death of said Hitchcox was suggested on the record of said court, and a *scire facias* awarded to revive said suit.

3. That afterwards in the year 1875, another suit was instituted by T. P. Jeffery, Admr., etc., against said M. M. Hitchcox heirs *et al.*, to sell the real estate of which said Hitchcox died seized, to satisfy his debts.

4. That afterwards said suits as hereinbefore specified, were consolidated and heard together.

5. That Commissioner Wm. H. Douglass, in aforesaid causes reported the real estate of M. M. Hitchcox of which he died seized, amongst which there was one-third of eight hundred and fifty-nine and one-half acres of land situated in Murphy district Ritchie County.

6. That said tract of one-third of eight hundred and fifty-nine and one-half acres was decreed to be sold, and R. S. Blair was appointed special commissioner to make sale of same.

7. That the same land as described as aforesaid, was sold by special commissioner, R. S. Blair, on the 11th day of December, 1876.

8. That at aforesaid sale, A. S. Core became the purchaser of said one-third of eight hundred and fifty-nine and one-half acres.

9. That said sale was confirmed on the 24th day of April,

1877, but no commissioner was appointed to make a deed to said purchaser.

10.   That said Blair made a deed for said tract of one-third of eight hundred and fifty-nine and one-half acres to said Core, the 8th day of February, 1881. ˙

11.   That the said deed was not delivered to said Core except by filing it as an exhibit in the case of said Blair, special commissioner, against said Core to enforce the lien that the said Blair, commissioner, had retained in said deed to secure the unpaid purchase-money.

12.   That said Core departed this life before said last mentioned suit had ended, and that said deed was not recorded until October 22, 1888.

There was no personal service of process on the defendant. An order of publication was taken and executed, and on October 20, 1892, the court appointed commissioners to go upon the land and make a partition thereof according to the prayer of the bill, and on the 2d day of February, 1893, the commissioners filed their report. On March 1, 1893, Sherwood appeared by counsel, demurred to the bill, the demurrer was overruled and he was given sixty days in which to answer. On June 27, 1893, the answer was filed and thereupon the order in which the commissioners were appointed to divide the land was set aside. On June 20, 1895, an order was entered, referring the cause to John H. Lininger, commissioner, to take proof and make report of certain matters set forth in the decree bearing upon the question of title. On October 28, 1896, an order was entered, directing the commissioner of school lands to institute proceedings for the sale of the land in order that the parties might have an opportunity to redeem it, it having been delinquent for the taxes for the year 1873 and sold by the sheriff and purchased by the State in 1875. On October 20, 1897, the defendant filed an amended and supplemental answer in the nature of a cross-bill, in which he set out more fully and completely his claim of title and alleged certain forfeitures of, and defects in, the title of the plaintiffs, and prayed, by way of affirmative relief, that the plaintiffs be required to fully and particularly reply thereto; that the tax sale of December 2, 1871, and the tax deed of September 29, 1873, might be set aside and adjudged to be null and void; that the claim and interest of the plaintiffs might be decreed to be forfeited, for failure to have the land assessed as aforesaid, and

vested in the defendant; that the plaintiffs might be perpetually enjoined from making any claim of right or title to the land by virtue of the tax sale or deed or in any other way and from interfering with the right of the defendant in the land or his possession thereof; and that he might have general relief.

From this amended and supplemental answer it appears that Atkisson and Peirsol had conveyed this land to C. H. Mussetter by a deed, dated July 15, 1875, reserving in the deed a lien on the land for their purchase-money or part of it; that Mussetter conveyed the land to James Cross and W. J. Ramsey by a deed dated September 18, 1875; that Ramsey conveyed his interest to Cross by deed dated ——18, ——; and that Atkisson and Peirsol brought suit in 1877, and enforced their vendor's lien against the land by a sale of it and became the purchasers thereof. The deed made to them in pursuance of this purchase by C. D. Merrick, special commissioner, is filed as an exhibit with the original answer and also with the supplemental answer, and in the latter it is alleged that O. M. Brown joined in it because he had previously obtained from Atkisson and Peirsol some contract relating to, or giving him an interest in, the land the full details of which contract are unknown to the defendant. It is alleged here that the tax sale purporting to have been made December 2, 1871, at which Hitchcox, Lambert and Rogers became the purchasers and in pursuance of which the deed of September 29, 1873, was executed to them and the deed itself are void because the land was never returned delinquent for the year 1870, in the name of A. N. Williams' estate or A. M. Williams' estate; because the list of tax sales does not show that the land was sold for taxes charged against A. M. Williams' estate as the land was assessed with taxes; because it does not appear that the estate was sold or charged with taxes as required by law at the time; because the sheriff did not within ten days from the day he received the delinquent list set up at the front door of the court house of his county notice that the same would be sold at public auction on the first day of the next term of the circuit court of said county, and did not publish notice of such sale in the newspaper as required by law, although there was, a newspaper then published in said county of Ritchie, and did not return to the recorder of the county the list of sales which he claims to have made on the second day of December, 1871, including the sale of the land in question, until the 18th day of January, 1872, al-

though the law required such list of sales to be returned to the recorder within ten days after the completion thereof, and in said year 1871, the first day of the term of circuit court next after he received the said delinquent list was on said second day of December and the law required said sales to be completed upon that day; because the recorder did not record said list and transmit the same to the auditor within twenty days after the time when said sheriff had legal authority to make and complete said sales; because the list of sales described said land as eight hundred and fifty-nine and one-half acres instead of eight hundred and fifty-nine and one-fourth acres as the same was assessed; because said list of sales described said land as assessed to A. M. Williams, instead of A. M. Williams' estate as it was assessed; because the land is described in the deed as eight hundred and fifty-nine and one-half acres instead of eight hundred and fifty-nine and one-fourth acres as in the list of sales; because although the deed recites that Hitchcox, Lambert and Rogers, on August 8, 1873, caused a plat and report of said land to be made to the clerk of the county court of the said county, that the same was ordered on the 18th day of September, 1873, to be recorded and that the same has been recorded in said clerk's office and is now on record therein, in fact, such plat or report was not made and was not ordered to be recorded and is not now on record in said county.

Before the filing of the amended and supplemental answer, Commissioner Lininger had made his report, and this answer avers that the new matter set up in it appeared in the evidence in the execution of the order of reference, and made necessary the filing of the amended and supplemental answer, which was done with leave of the court, and it was remanded to rules with leave to the defendant to sue out process thereon which was done. The plaintiffs filed a demurrer to the amended answer in the nature of a cross-bill, which was overruled, and later they filed a reply thereto which admits the matters of fact set up in the amended answer of the defendant, but denies the equities and legal consequences claimed and insisted upon by the defendant as arising therefrom.

The commissioner, in his report, found that the plaintiffs have a title to the undivided one-third of the land; that the defendant, Sherwood, was the owner of the remaining undivided two-thirds; that the titles of both plaintiffs and defendant, however,

had been forfeited by reason of a sale of the land to the State on the 11th day of October, 1875, for the non-payment of taxes thereon for the year 1873, in the name of A. M. Williams' estate; that a small amount of timber had been cut off of the land by authority of the defendant; that neither plaintiffs nor defendant ever had been in actual possession of the land; that none of the parties had ever exercised any actual ownership over the land other than to go upon it and notify persons not to cut any timber; that plaintiffs and defendant are tenants in common in the land and that the purchase made by Lambert at the tax sale on June 9, 1874, operated as a redemption of the land and did not divest Hitchcox of his title to one-third of it. The defendant excepted to the report of the commissioner and particularly to the first, second, fourth and eighth findings therein.

Another stipulation was filed in which it is agreed that Collins and Daugherty on one side and Sherwood on the other claim title from the same source, namely, the A. M. Williams estate and that neither party shall be required to go beyond that; that the affidavit of A. N. Williams showing that his father, A. M. Williams, died in 1860, without will and leaving certain persons as his heirs, may be read and treated as a deposition; that Collins and Daugherty are not and never were members of the firm of Wm. H. Sherwood & Co. in whose name the defendant, W. H. Sherwood, claims the land was assessed during the years 1881 and 1897, inclusive; and that the December term, 1871, of the circuit court of Ritchie County, began on December 2, 1871; and was adjourned to the 8th day of January, 1872, and no court was held between those dates, and the court sat on January 8, 1872, and on January 9, 1872, and finally adjourned on the 12th day of January, 1872.

In the meantime, the commissioner of school lands instituted a suit in the name of the State for the purpose of selling the land under its purchase of 1875, when the land was sold for the non-payment of taxes for 1873. The circuit court decided in that case that the defendant, Sherwood, had the right to redeem the land and from that decree an appeal was taken to this Court and the cause was decided here April 14, 1900. This Court held that by virtue of section 3 of Article XIII of the Constitution whatever title the State acquired by its purchase in 1875, was transferred to either Sherwood or to Sherwood, Collins and Daugherty and that the land could not be sold at the suit of the State.

The decree of the lower court was, therefore, reversed and the bill filed by the State dismissed. The Court says in the opinion that "The only matter at this time proper to determine is the status of the State as to the land in controversy; the conclusion being reached that such title to the land in controversy as the State may have derived from the tax purchase in 1875 having, by virtue of the constitutional provisions aforesaid, been transferred to and vested in one or both the claimants thereto, the State has no longer any interest therein, and is without right to maintain this suit either to force a sale or redemption of the land." As to the title of Collins and Daugherty, it is said in this opinion, "It is entitled to equal benefits under this section of the Constitution as the Sherwood title, provided the latter be not adverse and superior to the former, which question it is improper now to settle in this suit but is reserved, together with all other questions or controversy existing between the claimants to be determined and settled in the partition suit at the present time pending between them." On the 3rd day of July, 1900, this partition suit came on to be heard in the circuit court and upon the hearing, the exceptions to the plaintiff's amended answer in the nature of a cross bill were sustained, the amended answer was dismissed, costs were decreed against Sherwood, the exceptions taken to the report of the commissioner by Sherwood were overruled, the report was confirmed and the court decreed that partition of the land be made, giving to Collins and Daugherty one-third and the remaining two-thirds to Sherwood. From this decree an appeal was allowed Sherwood by a judge of this Court.

At the time of the sale of the land for taxes delinquent for the year 1871, the law required the sheriff to commence his sales on the first day of the next succeeding term of the circuit court of his county, commencing after the month of August. Section 6, chapter 31, Code 1868. The sheriff had the right to adjourn the sale, if the same was not completed on the first day, and that adjournment was required to be from day to day, not from time to time. Section 7, chapter 31, Code 1868. The language of the statute is "If the said taxes, interest, damages, and commissions be not previously paid, the sheriff or collector shall proceed to make sale accordingly; and if the same be not completed on the first day, it shall be continued from day to day (Sundays excepted), between the hours aforesaid until it shall be com-

pleted." This appears to be rather a prohibition of any adjournment except from day to day. The injunction of the statute is that the sale shall continue from day to day (Sundays excepted), until it shall be completed, not that the sale may be adjourned from time to time, nor from day to day without making sales. The sales must continue from day to day until completed, that is, the sheriff must go on and make sales until they are completed. The object of the statute clearly is to prevent postponement of the sales after the date fixed by law for the commencement thereof. The sale of delinquent land in question here, and upon which the plaintiffs found their claim of title, began on the day fixed therefor by law, the 2d day of December, 1871, that being the first day, of the first term of the circuit court, after the month of August in that year. But, after commencing the sales, it is claimed the sheriff did not proceed as the law requires. Because the court adjourned until the 8th day of January, 1872, more than one month, it is argued, the sheriff adjourned his sales for the same length of time. Black on Tax Titles, 2 Ed., s. 226, says "If no provision to that effect is made in the statutes there is no other source from which the collector can derive any authority to adjourn or postpone a tax sale. And the adjournment, when authorized, must be in the manner and for the causes prescribed by law. Proof that the alleged sale occurred at a time to which there had been no legal adjournment of the prior sale will overcome the *prima facie* evidence of the sale presented by the deed." But 11 Blackwell on Tax Titles at s. 498, says: "It has been held that without express authority conferred by statute to adjourn a sale from day to day, the officer must sell all the lands embraced in his list on the day named in the advertisement, or suspend the sale, so far as those which remain are concerned. Still, it is difficult to perceive any substantial reason why the general principle—that when a power is conferred by statute every incident essential to carry the power into complete effect goes with it by implication—does not apply. Where the law fixes the day of sale, and appoints an officer to conduct it, and is silent as to the power of adjourning the sale, it is impossible, on account of the great number of parcels of land upon delinquent list for the officer to sell the whole in one day, the power of continuing the sale to another day would seem to be necessarily implied, in order to prevent a failure of justice, in which the State is essentially interested." At sec-

tion 499, however, it is said "But in the case of *Sibley* v. *Smith,* (2 Mich. 486), it was held that this principle of taking power by implication was not applicable in the construction of this class of statutes; that being in derogation of the common law, and authorizing proceedings the effect of which is to divest the citizen of his title to real estate, such statutes should be construed strictly, although made for the public benefit." It is said that the deed did not show on its face that the sale took place at a sale appears to have occurred after the day set by law, and also that where the law required the sale to begin on a certain day and the deed showed the sale on a later date, it was held that the deed did not show on its face that the sale took place at a time not authorized by law, for it might have begun on the proper day and been continued from day to day, selling one or two lots each day until the day recited in the deed. Blackwell on Tax Titles, s. 497.

The record of sales made by the sheriff, as it appears in the clerk's office of the county court, shows that the sales began on the 2d day of December, 1871, that part of the land was sold on that day, that no sales were made between that day and the 9th day of January, 1872, and that on the 9th day of January, 1872, the sales were completed. The sheriff returned his list of sales to the recorder of the county on the 18th day of January, 1872. This is a plain violation of the statute. It is so worded as to prohibit adjournment and postponement of the sale, as has been shown. After commencing, if the sheriff will make sales each day, he may continue day after day as long as it is necessary to complete his sales but clearly he had no power under the statute in question to postpone the making of all sales for more than a month. It is not a question to be settled by presumption for the record in the clerk's office shows affirmatively that this adjournment and postponement of sales actually took place. Failure of the sheriff to proceed with his sales as required by the statute resulted in his failure to comply with another clause of the statute which required him to return to the recorder his list of sales within ten days from the completion of the sales. It appears that only two days were necessary for the making of those sales. They should have been completed on the third day of December, 1871, and the list of sales should have been returned within ten days from that date. In *Barton* v. *Gilchrist,* 19 W. Va. 223, it is held that if the recorder's office shows that the list

of sales was not returned to the recorder's office for more than ten days after the completion of the sale, it is such an irregularity as materially prejudices the rights of the owner of the land sold and, therefore, vitiates any deed made to a purchaser of the land by the recorder. While this has been held fatal to the validity of a tax deed, it seems less objectionable and injurious upon principle than the postponement of the sale for more than a month, in the face of the statute which expressly requires the sale to continue from day to day until completed. This failure on the part of the sheriff is fatal to the deed of September 29, 1873, and decisive of this case. The plaintiffs found their claim of title upon that deed, through Hitchcox's joint purchase with Lambert and Rogers at tax sale and the deed to him and Lambert and Rogers in pursuance thereof, as hereinbefore shown.

A. N. Williams died in 1860. As there had never been any partition of his land it might have been assessed and listed to his heirs, without designating any of them by name. It was assessed and listed for the year 1870 to "A. M. Williams estate." It was returned delinquent in the name of A. M. Williams, and in that name it was sold by the sheriff and certified by him as sold. Black on Tax Titles, s. 189, says "If property is assessed to the right person, a mistake in his name, if it is not calculated to deceive or mislead him, may be passed over as immaterial." The only error in assessing the property was in changing the initial "N" to "M." The quantity of land and its location were given with reasonable certainty, and it would seem that the irregularity in the name, being the changing of an initial letter only, and that the initial of the middle name, would hardly be calculated to mislead or deceive the owner. The sheriff's list of sales and the deed, however, fail to follow the description in the land book in respect to the name in which the land was assessed. The list and deed do not show that it was the land of a deceased person, the taxes upon which were chargeable to his heirs or devisees, while the land book does show that fact. In respect to the form and contents of the sheriff's return, Black on Tax Titles, s. 305, says "It is a general rule that, in respect to any directions which the statute may give as to the contents of the report, its provisions must be strictly followed; merely writing a name opposite the tract sold is no compliance with the law, does not give the information required, nor fulfill the purpose of the report; and a deed made upon such a memorandum of sale confers no title."

Under our curative statute, section 25 of chapter 31 of the Code, as construed and expounded by the later decisions of this Court, this departure might not be held fatal to the sale and the deed, but, this sale took place when that section of said chapter lacked many of the curative provisions which it contains now, and the departure from the description of the land is such as may have mislead the owners of the property to their prejudice.

Another reason assigned by the appellant for setting aside the deed is variance as to quantity contained in the list of sales and the deed. That being but one-fourth of an acre in a large tract of eight hundred and fifty-nine acres, cannot be regarded as having mislead any person.

A more serious matter is the allegation in reference to the report and plat which the statute required the purchaser to have made and recorded before obtaining the deed. The deed recites that such a report and plat were made and admitted to record on the 18th day of September, 1873, but it does not state by whom they were made. The recital is that the purchasers, on the 9th day of August, 1873, "In the manner prescribed by law caused a plat and report to be made to the clerk of the county court," etc. The statute provided that the purchaser should have the report made by the surveyor of the county in which the land was situated, or if he was interested, or there was no such surveyor, then by some person appointed by the recorder of the county. Who made this report is not shown by the deed but as it says the purchaser caused it to be made "In the manner prescribed by law," this is probably sufficient, for it could only be done in the manner prescribed by law by the surveyor or some one appointed by the recorder as provided by law.

The question is discussed as to whether the curative provisions of section 25 of chapter 31 of the Code, which might have the effect of making the deed in question good, notwithstanding the defects pointed out, are retroactive and apply to said defects and to this case. Ordinarily, statutes are not retroactive unless expressly made so, and statutes intended to affect the validity of tax sales, do not seem to be exceptions to that rule. Section 490 of Black on Tax Titles, says: "It is also to be remembered that, to a statute explicitly retrospective to a certain extent and for a certain purpose, the courts will not, by construction, give a retrospective operation to any greater extent or for any other purpose; and this well established rule applies to the

construction of statutes curing defective tax proceedings." In *United States* v. *Heth,* 3 Cranch 413, the following is found in the opinion of the Court: "Words in a statute ought not to have a retrospective operation unless they are so clear, strong, and emphatic that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." See also *Chew Heong* v. *United States,* 112 U. S. 559; *Murray* v. *Gibson,* 15 How. 423; *McEwen* v. *Den,* 24 How. 244; *Harvey* v. *Tyler,* 2 Wall. 347; *Soahn* v. *Watterson,* 17 Wall. 599. An examination of this statute reveals no words expressly ·or impliedly making it retroactive in its effect.

As Hitchcox failed to pay his part of the purchase-money in pursuance of the sale made December 2, 1871, and all the money was paid by Lambert and Rogers, and Sherwood being now the owner of all the interest acquired by Lambert and Rogers, it is claimed by his counsel that even if the tax deed made in pursuance of that sale is good, a resulting trust arose in favor of Lambert and Rogers, by reason of Hitchcox's failure to pay his part of the purchase-money, and they then acquired the entirety of the land under that purchase and by their conveyance it passed to Sherwood. He further contends that Collins and Daugherty, holding under A. S. Core, the purchaser of Hitchcox's alleged interest, had notice of this resulting trust, by reason of the fact that afterwards Lambert and Rogers purchased the land at another tax sale. Under various decisions of this Court, relating to the doctrine of resulting trusts as well as under the general principles of law relating thereto, this claim is not without merit, if it be conceded that the tax sale was valid. However, as the sale is held to be invalid, nobody acquired any title under it by way of resulting trust or otherwise. It is, therefore, unnecessary to consider that question. It would be nothing more than following up a question out of a spirit of curiosity.

But the case is unquestionably for Sherwood for another reason. In *Collins* v. *State,* 35 S. E. 840, this Court has held that the title to this very land has been transferred by virtue of section 3 of Article XIII of the Constitution, to Sherwood or to Sherwood, Collins and Daugherty. If any of them hold by such title it is Sherwood alone, for he and the persons under whom he claims are the only persons who could be entitled under said provision. No person can take under any clause of that consti-

tutional provision who has not paid taxes on the land. Neither
Collins and Daugherty nor any of the persons under whom they
claim, have paid any taxes on any of the land. Sherwood and
those under whom he claims have kept the land on the land
books in their names and the taxes paid from 1883 until the
present time, and have actually paid all the taxes thereon for
about twenty years. See Judge Dent's opinion in *Collins* v.
*State*. This conclusion is resisted by counsel for appellees on
the ground that Hitchcox was dead and his estate in the custody
of the law at the time it ceased to appear on the land books in
his name. This position is untenable. The mere fact that a
creditor's suit is pending against the estate of a deceased person
cannot relieve the heirs and creditors of such person from the
payment of taxes on the land nor prevent the land from be-
coming forfeited for failure to have it assessed with taxes. No-
body could seriously contend that it is the duty of a court or its
officers to see that property in litigation before it is assessed and
the taxes thereon paid. Parties interested in it as heirs, devisees
or creditors have the right to do so, and must do it or suffer the
forfeitures demanded by the law.

Another question to be disposed of is, whether the defendant is
entitled in this suit to have said tax deed set aside by way of af-
firmative relief. The invalidity of the tax deed is a good de-
fense to the claim for partition. The establishment of a result-
ing trust would defeat partition. But defendant sets up in his
answer new matter, constituting a claim for affirmative relief,
and as such relief asks that the deed be cancelled and set aside as
being a cloud on his title. Ordinarily, in a suit for partition,
the defendant asks the same relief as the plaintiff, and in such
case a cross-bill is unnecessary. 5 Ency. Pl. & Pr., 636. How-
ever, when a defendant in such suit, claim he is equitably enti-
tled to the whole premises of which partition is sought, and
desires not only to repel and defeat the claim of the plaintiff to
have partition but also to have the legal title transferred to him,
he must proceed by cross-bill. *German* v. *Machin,* 6 Paige (N.
Y.) 290. So on a bill to foreclose a mortgage, a cross-bill may be
filed to have cancellation of the mortgage sought to be fore-
closed. Story's Eq. Pl. 391; *Tarleton* v. *Vietes,* 6 Ill. 472;
*McConnell* v. *Hodson,* 7 Ill. 640. "A cross-bill may be main-
tained for the purpose of obtaining an equitable set-off, or to
establish an agreement or conveyance which the original bill

seeks to set aside or to compel the surrender or cancellation of a contract which the original bill seeks to specifically enforce." Beach Mod. Eq. Pr., s. 435. The matter set up in the answer of Sherwood upon which he asks cancellation of the tax deed is germane to the subject matter of the original bill. The allegations and proof upon which that relief may be granted form a complete defense to the bill for partition. Sherwood, thus showing himself to be entitled to the whole of the land, is certainly entitled, upon the evidence and allegations necessary to give him such title, to have the deed cancelled. The court, therefore, erred in dismissing his answer in the nature of a cross-bill.

No money is tendered with the answer in the nature of a cross-bill, nor does it express any willingness to pay Collins and Daugherty anything. This is excused by the fact that they are not entitled to anything from Sherwood. Hitchcox, under whom they claim to hold, paid no purchase-money, nor any taxes, nor any of the expense of obtaining the deed. That was all paid by Lambert and Rogers under whom Sherwood might claim if the tax deed were valid. But he does not claim under that deed alone. He has all the right and title obtained by Lambert and Rogers under their second tax sale purchase of the land, and he also holds all the right, title and interest of the A. N. Williams heirs.

For these reasons, the decree of the circuit court of Ritchie County is to be reversed, and the cause remanded to that court to be further proceeded with according to the principles here announced and further according to the rules and principles of equity.

*Reversed.*