# CHARLESTON.

## HARDMAN *et als. v.* BRANNON.

Submitted June 4, 1910.    Decided February 27, 1912.

1. TAXATION—*Tax Sales—Time for Sale.*
    A sheriff has no authority to sell land for delinquent taxes at a time not fixed by the statute. (p. 730).

2. SAME.
    If a sheriff should not receive the list of delinquent lands from the auditor in time to complete the publication of notice of sale, and thereafter sell in November or December, as provided in sec. 6, ch. 31, Code 1906, he must, after first publishing the notice required, commence his sale on the first day of a circuit or county court, which ever is first fixed by law to be held in the next succeeding year. (p. 729).

3. SAME.
    A tax sale, appearing on the face of the preceedings to have been made in the month of March, in a county wherein the statute provides for a term of circuit court to begin on the first day of February, is void, and a deed made in pursuance of such sale is also void. (p. 728).

4.  SAME. ·
        Error in the time of making sale, appearing on the face of the proceedings, is fatal. It is not cured by sec. 25, ch. 31, Code 1906.  (p. 731).

5.  SAME. .
        Such error will be presumed to have prejudiced the former land owner, and is good ground for avoiding the tax deed made in pursuance of such void sale.  (p. 732).

6.  EVIDENCE—*Judicial Notice—Time of Holding Court.*
        This Court will take judicial knowledge of the time fixed by statute for the holding of regular terms of circuit courts in the various counties of the state.  (p. 729).

7.  TAXATION—*Tax Titles—Suits to Try Title.*
        A bill attacking the validity of a tax deed must allege the particular matter on which the pleader relies.  (p. 734).

8.  APPEAL AND ERROR—*Disposition of Cause—Reversal—Leave to Amend.*
        If the record discloses facts sufficient to avoid a tax deed, which have not been averred in the bill, and a decree has been entered on full hearing below dismissing the suit, without giving leave to amend, this Court will reverse the decree and will remand the cause with leave to amend the bill to conform to facts so disclosed.  (p. 735).

(BRANNON, PRESIDENT, absent). ·

Appeal from Circuit Court, Gilmer County.

Bill in equity by Marcellus Hardman and others against Edwin L. Brannon. Suit dismissed and Marcellus Hardman and Marcellus Stump appeal.

*Reversed and Remanded.*

*R. G. Linn* and *E. A. Brannon,* for appellants.

*R. F. Kidd* and *W..W. Brannon,* for appellee.

WILLIAMS, JUDGE:

Marcellus Hardman and Marcellus Stump, in his own right and as executor of Susan M. Stump, deceased, have appealed from a decree of the circuit court of Gilmer county, made on the 15th of March, 1907, dismissing their suit which had been brought for the purpose of avoiding a tax deed made to Edwin L. Brannon on the 7th of June, 1904, for a tract of 95¾ acres of land.

Hardman acquired the land by deed from J. M. Hamilton, special commissioner, 20th April, 1889, in a suit in the circuit court of Gilmer county, styled *Spencer Collins, trustee,* vs. *Marcellus Stump and others,* but did not have his deed recorded until 13th February, 1902. Hardman then sold it to Susan M. Stump, but retained title to secure $500 of the purchase price. Mrs. Stump died, testate, in May, 1904, leaving Marcellus Stump her sole devisee and executor. Hardman not having recorded his deed from the commissioner, the land remained on the land books assessed with taxes in the name of Marcellus Stump, the former owner, and present owner of the equitable title. It was sold in March 1903 in the name of Marcellus Stump, for the delinquent taxes of 1900, as a tract of 59 acres, and was purchased by the defendant for $13.60.

Plaintiffs made a tender of the purchase money and interest. There was a demurrer to the bill, which the court overruled, and defendant answered denying every allegation of the bill, and plaintiffs replied generally. The cause was heard upon the merits, on pleadings and proof, which was altogether documentary, and the court dismissed the suit without giving plaintiffs leave to amend their bill.

The tax deed, which is exhibited with the bill, recites that the sale was commenced and completed in the month of March, 1903, and plaintiffs say that the invalidity of the deed is thereby shown, because the sheriff could not then lawfully sell. The time when he shall sell depends upon statute. Section 6 of chapter 31 prescribes, with great particularity, the time when the sheriff shall commence his tax sales. After providing for the posting and publication of notices of sale, that section proceeds to fix the following time, or times, for commencing sale, in the following order, viz: First, on the first day of the next November or December term of the circuit or county court of the said county, whichever may be held first after the completion of publication of notice; or, second, if no term of either court is held in either November or December, then on the second Monday in December next after the publishing of said notice; or, third, in the event the sheriff should not receive the list of delinquent lands from the auditor in time to publish notice and make sale in November or December, he shall commence his

sale on the first day of a circuit or county court, which ever may be held first, in the succeeding year, next after the publication of notice. It does not appear why the present sale was not made in November or December. But, authority being given to sell on the first day of a circuit or county court in the succeeding year, in a certain event, we think it may be fairly and properly assumed that that event did happen, and that the sale in the succeeding year was made at the time fixed by the statute, unless the contrary affirmatively appear. The statute says he must sell on the first day of a circuit or county court, whichever is first held, after the completion of publication. No other time is given. Does it affirmatively appear that the sale was not commenced on the first day of the first term of a court, circuit or county, whichever was first held in 1903? We think it does, and in the following manner. Under the law then (1903) in force, (Code 1899, p. 1148) a term of the circuit court for Gilmer county was appointed for the first day of February. This fact we take judicial knowledge of because it is fixed by a public statute. The sheriff's return of sales, and the deed, both show that the sale was begun on the second, and completed on the third day of March, 1903, a time beyond the February term of circuit court.

It is urged in brief of counsel for defendant, that it is not proven that the February term of the circuit court was actually held, nor that a regular term of the county court was not held on the 2nd of March, and that it was the first of either of the courts held in that year, in which event, they say, a sale on the 2nd day of March would be a compliance with the statute. We do not think this argument sound for two reasons. (1) Because, it is the purpose of the statute in fixing the first day of the term of a particular court, as a date for the sale, to have it at a time when the people collect at the court house; it is also a continuing notice, in the body of the law, to all delinquent tax-payers, that their land is liable to be sold on a day certain; and (2) the sheriff has to publish his notice in advance of the day fixed for the sale, and he must be governed by the statute fixing the time of the circuit court, and by the statute, or the previous order of the county court, fixing the time of holding that court, and he can not anticipate that a term of the

circuit court fixed in February would not be held.    Publication
of his notice will have been completed before he could know
that a term of court, appointed by law, would not be held.
There is a statute providing for the election of a member of the
bar to hold the circuit court, in the event the judge is not
present.    Whether the February term of the circuit court was
actually held, or not, is not material, because the time fixed by
the statute for the holding of the court is more material, in
determining the time when the sheriff should publish notice
that his sale will be made, than the actual holding of the court
on the day fixed.   Seeing that there was a term of the circuit
court for Gilmer county which the statute says shall be held on
the first day of February, we are of the opinion that the sheriff
could not lawfully sell in the month of March.

Sale of land for delinquent taxes is purely a statutory pro-
ceeding, summary in its nature, and, being in derogation of the
common law rights of property, the courts uniformly apply to
such statutes the rules of strict construction.    They hold that
every step in the proceedings which results in divesting the
owner of the title to his land must be strictly complied with.
"A sale made at a time not appointed or provided for by law is
without authority and void."    1 Blackwell on Tax Titles, (5th
ed.) section 488; Black on Tax Titles, (2nd ed.) section 221;
*Keith* v. *Preston*, 5 Grat. 120; *Thatcher* v. *Powell*, 6 Wheat. 119.
Chief Justice Marshall, who delivered the opinion of the court
in the case last cited, at page 127 says: "In summary pro-
ceedings, where a court exercises an extraordinary power under
a special statute prescribing its course, we think that that course
ought to be exactly observed, and those facts which especially
give jurisdiction, ought to appear, in order to show that its pro-
ceedings are *coram judice*."    This principle, we think, should
apply with even greater force in a case wherein a sale of land
is made by a ministerial officer, acting by virtue of authority
conferred directly by statute, and without any process or order
by a judicial court.    A history of the statutory proceedings, in
Virginia and in this state, for the sale of land for delinquent
taxes, and the court decisions bearing thereon, are reviewed in a
well prepared and elaborate opinion written by Judge HOLT, in
*Hays* v. *Heatherly*, 36 W. Va. 613.

The more recent decision of *Collins* v. *Sherwood,* 50 W. Va. 133, is direct authority on the point we are here discussing. It was decided in that case that the sheriff could not adjourn his tax sale from December 2nd, 1871, to January 9th, 1872, under a statute which authorized him to adjourn his sales only from day to day, and that such unauthorized adjournment rendered the tax sale void. It necessarily follows that, if a sheriff can not adjourn a sale, after it is properly begun, to a time other than that fixed by the statute, he can not begin his sale at a time other than that fixed by the statute.

But it is insisted by counsel for appellee that the failure to sell at the time provided by the statute, is cured by section 25, chapter 31, Code 1906. We do not think so. That statute is subject· to the same rules of strict construction· that govern the interpretation and construction of the general statute on the subject of sale of delinquent lands, and it can not be properly held to embrace and cure any defect in the tax sale proceedings, not therein expressly included. The first part of section 25 prescribes the effect to be given to the deed which the clerk is authorized, by a prior section, to make to the tax-purchaser, and then proceeds to say that it shall have such effect, "notwithstanding any irregularity in the proceedings under which the same was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the clerk of the county court, and be such as materially to prejudice and mislead the owner of the real estate so sold, as to what portion of his real estate was so sold, and *when* and for what year or years it was sold, or the name of the purchaser thereof; and not then, unless it be clearly proved to the court or jury trying the case, that but for such irregularity the former owner of such real estate would have redeemed the same under the provisions of this chapter."

In construing section 25, chapter 117, Acts of 1872-3, which contained the same provision, in substance, as section 25, chapter 31, Code 1906, in respect to proof of prejudice, and whether or not the former owner was misled, it was held by this Court in *McCallister* v. *Cottrell,* 24 W. Va. 173, (Pt. 2 Syl.), that, if the error ·or irregularity appeared on the record of the proceedings, it must be presumed to have prejudiced the former owner,

and that parol evidence was not admissible to prove the fact of prejudice. That decision is authority for the construction of the statute as it now is, and after it was amended by Acts 1882, chapter 130, so far as it relates to errors appearing on the face of the proceedings, provided, however, the irregularity complained of is not expressly cured by said section as amended. The question then arises, does section 25, chapter 31, Code 1906, cure a mistake as to the time of sale? We do not think so. The time for making the sale is material, for the reasons hereinbefore named. The sheriff has no authority in law to sell at any other time. He can not appoint his own time; he must pursue the statute strictly. The error, or mistake, as to the time the sale was made, appears on the record, in the manner in which we have herein before pointed out, and it is not one of the mistakes or irregularities embraced within any of the curative provisions of section 25. It must, therefore, be presumed that the owner was prejudiced by it, and for this reason we hold the tax deed to be void.

There is no merit in the claim that plaintiffs were misled by the description of the land in the sheriff's return of the list of sales. The land was assessed to Marcellus Stump as 59 acres, and described on the land book as "Steer Creek Mill," and had been so designated since, and including the year, 1889. It was proper for the sheriff to get his description of the land from the land book, and he apparently did so, for his return list describes it as "Steer Creek Mill." That was the description by which plaintiffs had paid taxes on the land for a number of years before.

The fact that the surveyor reported the land to contain 95¾ acres can not affect the case. He did not make his survey and report until after the redemption year had passed. How, then, could that fact mislead and prevent redemption? It could not. That the tract contained, by actual survey, more land than was shown by the assessment and by the sheriff's list of sales, is not a matter of which plaintiffs have any right to complain. True it had been sold and conveyed to Hardman by the commissioner as a tract of 95¾ acres in 1898. But Hardman did not put his deed on record until 1902, nearly four years thereafter, and did not have the quantity of land corrected on the land books. It was the owner's fault that the correct quantity did not appear.

On the list of sales, filed by the sheriff with the clerk, in the column headed "Date of each sale," opposite the tract of 59 acres, and just under the word "Redeemed," which is written opposite the tract next above, appear the following figures and marks, viz: " "3-3"." Do these ditto marks indicate that plaintiff's land was redeemed, and was this notation such a fact as was calculated to mislead plaintiffs? We think not. In tabulated statements ditto marks are generally used to avoid repetition of words, and when so used they are understood to stand for, and to mean the same as, the words and figures next above them. But we think it sufficiently appears, from an examination of the list itself, that the ditto marks were not here intended to stand for the word "redeemed", but were intended to indicate the date of the sale. This column is headed "Date of each sale," and the first figures appearing in it at the top are, "3-3, 1903". The first two figures stand for March 3rd, and, instead of repeating those figures where they would recur, opposite the various tracts of land, ditto marks are used, one set on the left of the column to indicate the month and the day of the month, and one set on the right to indicate the year. Some of the sales appear to have been made on March 2nd, and the figures "3-2" are then used, and ditto marks appear under these figures, in like manner, until a tract is reached which was sold on the 3rd, and then the figures, "3-3", are again repeated; this process is carried on throughout the column. The word "Redeemed" occurs in the column a great many times, and is sometimes repeated with no intervening ditto marks, thus clearly indicating that the ditto marks were intended to apply to the dates, and not to the word "Redeemed." Moreover, the law does not make it the duty of any officer to note on the list of sales what land has been redeemed, and it does not appear who wrote the word "Redeemed" on this list. So far as we know it might have been written by a stranger. Therefore, even if improperly placed there, it is not an error appearing upon the face of the record. Must a tax purchaser's right be held to depend upon the mutilation or alteration of the record by a stranger? We think not. But, assuming that the word "Redeemed" was written by the clerk, for his own convenience, and that possibly the ditto marks might be understood, by a person examining the record,

to refer to the word "redeemed", and, therefore, to apply to the tract of land in question, still we think the owners of the land could not thereby have been misled to their prejudice. If land has been redeemed the owner ought certainly to know it, if he does not he is at fault, and ought not to be heard to say that he was misled by believing that it had been redeemed. It is not possible for the owner to be misled in relation to the redemption of his land without knowing, at the time he discovers the alleged misleading fact, that his land was sold for delinquent taxes. He should then be held to the exercise of diligence to ascertain whether his land is in fact redeemed. The alleged misleading fact appeared on the record in the clerk's office, and, if the owner did actually see it, it would have been an easy matter for him to make inquiry of the clerk in relation thereto, and his failure to do so would be inexcusable negligence.

It is urged that the invalidity of the tax deed, for want of authority in the sheriff to sell, can not be relied on here as cause for reversal, because that matter was not averred in the bill, and the attention of the lower court was not directed to it. This point is well taken. The want of authority to sell depended on a fact which had to be established in some way, and it is a familiar rule of pleading that every fact, material to plaintiffs' case, must be alleged; pleading must precede proof. Relief may be granted upon pleading when not denied, without proof, but never upon proof without pleadings. Plaintiffs do not specifically aver that the sale was made at a time not authorized by law, and counsel for defendant insist that, therefore, the bill is bad, and that the demurrer should have been sustained. The bill attacks the deed on two alleged grounds only, viz: (1) Misdescription of the land, and (2) because they were misled into believing the land had been redeemed, on account of the word "Redeemed", and the ditto marks under it, appearing on the list of sales filed in the clerk's office. The bill then contains the following general averment, viz: "for the irregularities aforesaid and other irregularities appearing upon the face of the record of the proceedings in the office of the clerk of the county court aforesaid", etc. This averment is too vague, general, and indefinite to be denominated good pleading. The particular fact relied on should be averred. That a part of the record of

the tax sale proceeding is exhibited with the bill, and discloses the fatal error, does not dispense with the necessity of an aver-ment in the bill pointing out the fact constituting the mistake on which plaintiffs rely.

"A bill to set aside a tax deed for defects in the proceedings under which it was sold must point out those defects." *State* v. *McEldowney*, 54 W. Va. 695, (Pt. 9 Syl.), and authorities cited on page 702. *Hogen* v. *Piggott*, 60 W. Va. 541. But, in-asmuch as plaintiffs' documentary evidence exhibited with their bill, in connection with the fact that there was a February term of circuit court in Gilmer county, which we judicially know, proves a case which would entitle them to relief, if the matter thus established had been properly pleaded, we will reverse the decree, sustain the demurrer and will remand the cause, with leave to plaintiffs to amend their bill to conform to the proof. The case being good as to proof, and bad only as to pleading, the court erred in dismissing the suit, without first giving plain-tiffs leave to amend. *Cecil* v. *Lamb*, 25 W. Va. 288; *Lamb* v. *Laughlin, Id.* 300; *Doonan* v. *Glynn*, 26 W. Va. 225.