# CHARLESTON

## HERTZOG v. RILEY.

Submitted June 8, 1912.   Decided January 21, 1913.

1. REFORMATION OF INSTRUMENTS—*Deeds—Grounds—Issues.*
    The case presented by the bill seeking reformation of a deed because not conforming to the prior contract, and because of the alleged mistake of the scrivener who drafted the deed, is not supported by the proof; but the evidence shows plaintiff entitled to relief in one particular not covered by the bill. (p. 653).

2. SAME—*Equity Jurisdiction.*
    Equity may reform a deed or contract where by fraud, accident or mistake of the scrivener, or by any other means, the same does not conform to the actual agreement of the parties.   (p. 655).

3. APPEAL AND ERROR—*Pleading—Issues and Proof—Amendment to Conform to Proof—Review—Determination of Cause.*
    In a case like this, before dismissing the bill, the general

rule is, to give plaintiff leave to amend his bill so as to present the case made by the proof; and if the court below omits to do this, the error in the decree appealed from may be corrected here. (p. 656).

Appeal from Circuit Court, Taylor County.

Suit by George L. Hertzog against J. D. Riley. Decree for defendant, and plaintiff appeals.

*Reversed and Remanded.*

*J. II. S. Barlow* and *John L. Hechmer,* for appellant.

*Eugene & S. II. Sommerville,* for appellee.

MILLER, JUDGE:

In a suit to reform a deed so as to conform to the alleged prior contract, the bill alleges that the deed as recorded, instead of reserving to plaintiff, according to said contract, "all the oil and gas underlying and contained in the said land, together with all the rights and privileges thereto belonging, and for the removal, mining, boring, excavating and developing the same; except  *   *   *   *   *   one-eighth of the rentals accruing to the plaintiff from and during the life of a certain lease theretofore given by the plaintiff, then and still in force," and of which rentals during the life of said lease the bill alleges "defendant was to have one-eighth part,   *   *   *   and  *   *   *   should oil be obtained during the life of said lease, then  *   *   *   to have the one-eighth of plaintiff's one-eighth royalty from all oil produced, and the one-eighth part of the plaintiff's rentals from the gas produced," it "purports to reserve  *   *   *   *   said oil and gas and the rights and privileges thereto, only 'during the life of the lease on the said lands'  *   *   *   *   with the single and only exception that, during" that time "defendant was to have certain parts of the rentals from said lease and, in the event oil or gas should be produced, during the term" thereof, "defendant was to have a portion of the money, or royalty accruing to this plaintiff, to-wit, the one-eighth part." A further allegation is that this was the mistake of the scrivener who prepared the deed, as defendant well knew. The charge of the bill is that the deed as recorded is not the deed plaintiff agreed to make, and that

defendant refuses to permit him to inspect the original deed, or to reform and correct it, so as to express the true terms and conditions of the contract. The prayer is that said deed be corrected and reformed, and made in accordance with the contract and agreement.

The answer of defendant substantially denies the material allegations of the .bill and puts the plaintiff on proof of the case as alleged. The decree appealed from denied plaintiff any relief and dismissed his bill.

Omitting immaterial parts, the exact language of the reservation in the deed as recorded is as follows: "There is hereby reserved, retained and excepted from the above conveyance *during the life of the lease now on said lands* all the oil and gas underlying the same together with the right to enter in' and upon said lands for the purpose of mining, exploring and boring * * * * *, but second party is to have and enjoy a one sixty fourth, part of all oil that may be produced and saved from said lands to be delivered to his credit to any pipe lines to which any well developed and producing oil may be connected and likewise second party shall be paid by first party his heirs or assigns a one sixty fourth part of all rentals that may be derived from any gas derived from any well that may be drilled on said lands the product of which is marketed off of such lands, and said lands are sold subject to the oil and gas lease now on said lands, but second party is to have a one eighth part of the commutation money to be derived thereunder until developments and then a one sixty fourth part of all the rents, issues, profits and royalties to be derived thereunder as above provided."

The proof does not sustain the case made by the bill. According to the original contract, as alleged, the rights of the grantee in the royalty oil and rentals were to be limited to the life of the oil and gas lease then on the land. The proof fails on this theory of the bill. The plaintiff in his testimony in chief swears that defendant was to have one-eighth "interest in the rental and one sixty-fourth part of the whole of the oil and gas." True, in response to a subsequent question as to how long the rights of the grantee were to continue, he does say: "That was to be determined by lease already on the land, which ran ten year from the time it was given." But on cross-exami-

nation he was asked: "Would you please state what words in the deed as now recorded are different from the one which you delivered to Mr. Riley?" He answered: "These words 'during the life of the present lease'"; referring to the words italicized in the reservation above quoted. By this we understand him to admit that with this exception the deed as recorded contains the contract made, and as was intended when the deed was delivered. If so, defendant's one sixty-fourth interest in the royalty oils and rentals was not to be limited to the life of the lease then on the land. And this accords with defendant's admission on the witness stand, that when he and plaintiff originally talked terms of the contract, plaintiff said he would like to reserve sixty-three sixty-fourths of the oil and gas for himself. Defendant's contention, however, is that before the deed was made he imposed different terms, that by a letter to plaintiff before deed made he agreed to take the land only on the condition that the reservation be limited to the life of said lease, a fact, we think, not supported by the evidence. The only letter shown in evidence to have been received by plaintiff from him imposes no such condition. Furthermore, Martin, the scrivener employed by plaintiff to prepare the deed swears, that to the best of his knowledge the words italicized in the reservation quoted, were not in the deed when it left his office; that he always used a regular form in drawing such deeds, and that he would not have used the words italicized, and thereby rendered the reservation inconsistent with itself, if it had been intended to limit that reservation to the life of the lease then on the land; that if that had been the object a much simpler form would have been appropriate and would have been employed by him. As we view the case the interpolation of these words constitute the strongest fact or circumstance tending to show that the deed must have been tampered with, certainly after it was originally drafted and had left the scrivener's hands, and after it was executed and delivered to defendant. The original deed, though called for, was not produced in evidence by defendant. This neglect he excuses on the pretense that it had been delivered to his attorney on some occasion and could not be found. The original deed would no doubt have shed light on the controverted point. Its absence, a very suspicious circum-

stance, we do not think is sufficiently accounted for. The attorney for defendant, and the attorney in whose hands the deed was when it is said to have been lost or mislaid, on his cross-examination of plaintiff implied by some of his questions that he had some knowledge of an interlineation in the deed before it was executed and delivered, and was apparently laying the foundation to contradict the witness. However,' though him self a witness, he made no attempt to prove by himself or any other witnesses, that any such interlineation had been made. The testimony of defendant amounts to a concession that by the original agreement plaintiff was to reserve sixty-three sixty-fourths of all the oil and gas. But for the words in italics this is just what the reservation in the deed would accomplish. Defendant's pretension that by letter to plaintiff he imposed other terms, limiting those rights to the life of the existing lease, is flatly contradicted by plaintiff; and his failure to produce any such letter or copies thereof, and the production by plaintiff of the only letter he ever received from defendant on the subject, dated March 10, 1908, the day before the deed was made and executed, acknowledging receipt of a letter from plaintiff of March 9th, and in which letter not one word is said about any modification of the terms of the reservation, strongly corroborates plaintiff's testimony that no such terms were ever imposed or agreed to.

But the fact, established, we think, by the proof, that the deed was tampered with after it was executed and delivered to defendant, by the insertion in the reservation by some one of the words italicized, in fraud of the rights of plaintiff, is not the case made by the pleadings. We are of opinion, however, that the proof in the case shows plaintiff entitled to relief, and that on proper pleadings such relief as indicated should be granted.

That a court of equity may reform a deed or contract where by fraud, accident or mistake of the scrivener, or by any other means, the same does not conform to the actual agreement between the parties, is well established. *Knowlton* v. *Campbell,* 48 W. Va. 294, 296; *Null* v. *Elliott,* 52 W. Va. 229, 231. But plaintiff can no more prevail on proof without allegation than on allegation without proof. *Pusey* v. *Gardner,* 21 W. Va. 476.

If possible, justice should be done. But in this condition of the pleadings and proofs what disposition should we make of the case? Following *Lamb* v. *Cecil,* 25 W. Va. 288, and subsequent cases, we should reverse the decree and remand the cause, and do what we think the lower court should always do before dismissing a bill in this situation, give leave to plaintiff to amend his bill so as to present the case made by the proof. See *Lamb* v. *Laughlin,* 25 W. Va. 300; *Doonan* v. *Glynn,* 26 W. Va. 225; *Gilchrist* v. *Oil Co.,* 21 W. Va. 115; *Van Winkle* v. *Blackford,* 33 W. Va. 573; *Rigg* v. *Parsons,* 29 W. Va. 522; *Ryan* v. *Nuce,* 67 W. Va. 485, 490, and *Hardman* v. *Brannon,* 70 W. Va. 726, 735.

For this error we are of opinion to reverse the decree and remand the cause for further proceedings.

*Reversed and Remanded.*