Christian, J.,
delivered the opinion of the court.
This case is before us upon a writ of error to a judgment of the Circuit court of the city of Eichmond. The suit was instituted on a policy of insurance issued by the appellants on the 16th Hovember, 1866, by which the appellees were insured to the amount of $3,000 against loss by fire. The building containing the goods insured was destroyed by accidental fire on the 31st March, 1867, which totally consumed a large portion of the goods, together with all the books and papers of the insured.
The only question we are called upon to determine, is whether it was error in the court below to give to the jury the instructions moved by the plaintiff’s counsel.
It seems that both the plaintiff and defendant moved the court for instructions; and both sets of instructions were given in the form in ivhich they were respectively presented. The court first gave the following instructions, which were moved by the defendant’s counsel:
1st. That it was the duty of the plaintiff, within a reasonable'‘time, to give to the defendant nbtice''of' his loss and damage; and as soon thereafter as possible to *317 deliver to the defendant a particular account of such loss or damage, signed with his own hand, and verified by his oath or affirmation; and also to declare on oath - whether any and what other insurance had been made on the same property, what was,the whole value of the subject insured, what was his interest therein, in what general manner (as to trade, manufactory, merchandise or otherwise) the building containing the subject insured, and the several parts thereof, were occupied at the time of the loss, and who were the occupants of said building, and when and how the fire originated, as far as the plaintiff knew or believed; and unless the jury is satisfied from the evidence that the plaintiff has complied substantially with these requirements of the policy, they must find for the defendant.
2d. That it was the duty of the plaintiff, when required by the defendants, to produce to the defendants certified copies of all bills and invoices, the originals of which have been lost, and exhibit the same for examination; and unless the jury shall be satisfied from the evidence that the plaintiff has complied, as fully as it was in his power to do, with the provision of the policy, he is not entitled to recover in this action.”
• To these instructions the plaintiff objected; hut they were given by the court; and then the plaintiff moved the court to give the following:
1st. “If, from the evidence, the jury shall believe that the plaintiff has fairly and reasonably complied with the terms of the policy of insurance, he is entitled to recover of the defendants a sum sufficient to cover the loss which he actually sustained by the fire; provided it does not exceed the sum of $3,000, the amount expressed in the policy of insurance.”
“ 2. If the jury shall believe that the plaintiff was insured in the company of the defendants by policy Ho. 136 (see policy copied on pages 21 to 29, inclusive, of the record), and that afterwards, on the night of *318 the 31st March, 1867, the stock of the plaintiff was destroyed by accidental fire, and without any evil practice or fraud on the part of the plaintiff; < and that on ^ie day of April, 1867, the plaintiff furnished a statement of his loss, verified hy the oath of his agent o0iing]jyj and that the defendants refused to receive the same, upon the ground that the policy required the statement of loss to he signed by the hand of the plaintiff, and verified by his affidavit, and so informed the plaintiff, his agent or attorney at law; and that afterwards the plaintiff, hy his attorney at law, required the said company to point out what proof they required of the plaintiff, and to specify any defect in the proof of loss furnished, and that thereupon the defendants required the affidavit of loss to be made hy the plaintiff himself; and the plaintiff afterwards, in a reasonable time, furnished the proof of loss contained In paper marked (A) (entered on page 40-41 of the record), and the defendants received the same without objecting thereto, or specifying any objection; and that said defendants at that time, and after such proof of loss was given, did not require a more particular specification of the loss; then their right under .their policy if any, to demand a more particular specification of the loss was waived hy their neglecting to demand it.” •
“ 3. The court instructs the jury that it is the duty of the defendants to prove evil practice or fraud on the part of the plaintiff, if they rely upon the same as a defence.
“4. If the jury shall believe, from the evidence, that In making his claim against the defendant, the plaintiff committed, wilfully, any fraud or false swearing, for the purpose of enabling him to recover of the defendant more than he was justly entitled to under his policy, upon the facts as they really occurred, then he is not entitled to recover.”
*319 As to the first instruction asked for by the plaintiff we are of opinion that there is no error. It was substantially the same which had already been given to - the jury in the first instruction propounded by the defendant’s counsel; the only difference being that the latter sets out specifically the several conditions of the policy, and then says that “unless the jury shall believe, from the evidence, that the plaintiff has substantially complied with these requirements of the policy, they must find for the defendants; ” while the former, without setting out the terms of the policy, declares that the jury must be satisfied that the plaintiff has fairly and reasonably complied with the terms of the policy.
These two instructions, so far from being inconsistent, are substantially and in effect the same, and intend to assert, and do in effect assert, this proposition of law: That compliance with the requirements of the policy (which is the contract of the parties) is necessary; but that a literal compliance is not necessary, where a substantial■ compliance has been shown. This proposition is not contested by the defendant, but is affirmed by them in the first instruction given by the court at their instance. It is certainly true, that all that can be required in such a case is (as in any other contract) a reasonable and substantial compliance with the conditions of the policy. Angel on Insurance, § 229; Turley v. North Amer. Fire Ins. Co., 25 Wend. R. 374 ; 2 Philips on Ins. § 1865; 2d Kern. R. 81.
As to the second instruction asked for by the plaintiff, it is earnestly insisted by the learned counsel for the defendant, that the court below was in error: 1st, because the facts upon which it was hypothecated were not proved, but assumed by the court; and, 2d, because the court undertook to decide a question of fact, while it referred a question of law to the jury.
It is evident that this construction points to that portion of the evidence which is set forth in the re *320 corcl, in the shape of a correspondence between the attorney for the plaintiff and the agent of the defendant.
- The fire occurred on the 31st March, 1867. On the 9th day of April, 1867, preliminary proofs, as they are called, were furnished to the defendant, in the shape of a notice signed by P. M. Colinsky, agent and attorney in fact of Meyer Cohen, and verified by him, together with a certificate of a justice of the peace of the city of Richmond. The notice and certificate are as follows :
“ To the Home Insurance Co., New Haven, Conn.:
“ I hereby give you notice, as heretofore your agent has been notified, that on the night of the 31st March last, between the hours of two and three o’clock, my store, in the wooden building hTo. 1715, on the south side of Main street, between 17th and 18th streets, in the city of Richmond, was fired accidentally or otherwise, by means wholly unknown to me, and in which I had nó manner of participation, directly or indirectly, and my stock of dry goods, insured by you to the amount of $3,000, by policy Ro. 136, and by the "Washington Tire Insurance Co., of Baltimore, to the amount of $2,000, was entirely consumed in part, and in part so much burnt as to be of no value whatever. The stock was composed of a general variety of dry goods suitable for this market, and was worth, at the time of the fire, in cash value, at least seven thousand five hundred dollars. A more minute description or account T cannot give, because my books and papers were consumed by the fire. And I demand of you three thousand dollars, the amount insured by you.
“ Signed Meyer Cohen, by P. M. Colinsky, agent, and attorney in fact.”
The certificate of the justice, sent with the above-notice, was in these words :
*321 “ I, Augustus Bodeker, a justice of the peace for the city of Richmond, do hereby certify, that I am well acquainted with the character and standing of M. Cohen and P. M. Colinsky, his agent and attorney in fact, in this community, and reside not far from the store lately occupied by him on Main street; that I have enquired into the circumstances attending the late fire in his store, and believe that he has by misfortune, and without fraud or evil practice on his part, sustained loss to the amount claimed by him.
Given under my hand this 9th day of April, 1867.
Signed, A. Bodeker, J. P.”
These preliminary proofs were submitted to the agents of the Home Insurance Co. by the counsel for Cohen, accompanied by a letter, explaining that Cohen was, at the time of the fire, and still was, detained in New York by illness; and that, therefore, his application was of necessity verified by his agent and attorney in fact, Mr. Colinsky. To this letter the agents of the Home Insurance Company reply, that they are instructed to refuse to receive any papers furnished by the reputed agent of Cohen, or to acknowledge any liability under the same; and that the company demand proofs in due form, with copies of bills of goods purchased or other authentic evidence of the amount of goods on hand.
A long correspondence follows, in which the attorney of Cohen insists that he has furnished all the preliminary proofs required by the policy, and that it is impossible to furnish copies of bills of goods purchased, or any more minute specification, because of the fact that all the books and papers of Cohen had been destroyed by the same fire which consumed his goods. On the other hand, the agents of the defendants, in their letter, insist that the proofs must be furnished by Cohen himself.
*322 After many letters had passed between the agents of the company and the attorney for Cohen, there was furnished to the agent a notice, verbatim et literatim, as the former notice, signed and verified by Cohen instead of Colinsky as agent and attorney in fact. It cannot fail to be remembered, that after the first letter from the agents, demanding copies of bills of goods purchased, and the reply of Cohen’s attorney that this was impossible from the fact that all his books and papers had been destroyed, the agents of the company, though pressed to point out (in the absence of the books and papers) what additional proof was required, failed to indicate the character of the evidence they required, but simply insisted that the proofs must be submitted by Cohen himself.
There is a letter in the record which was given in evidence to the jury, but not alluded to by the counsel in the argument, which furnishes a key to this correspondence, otherwise vague and indefinite. It is a letter written by Cohen to the agents of the Home Insurance Company in Richmond, he then being in New York, dated April 3rd, 1867, in which he informs the agents at Richmond that he had revoked the power of attorney he had given Colinsky, as his agent, to manage his business at Richmond. This letter was, no doubt, received by Alfriend & Son, the agents of the Home Insurance Company, before the application was received from Colinsky, the agent of Cohen, which bears date April 7th, 1867. This accounts for the agents of the Home Insurance Company protesting, from the beginning of the correspondence with the attorney of Cohen, that he would not receive the papers furnished by the reputed agent of Cohen; and insisting to the end, that he must have the preliminary proof, furnished by Cohen himself. The prominent idea in the mind of the agents who conducted this correspondence, as shown by the letter referred to, was, that inasmuch *323 •as Cohen had revoked the agency of Colinsky, and had informed them of this revocation, they were not ■at liberty to receive the preliminary proof from an agent whose powers had already been revoked, but must require them from the principal. It is true, in their first letter to the attorney for Cohen, they not only say that they will not receive the papers furnished by the reputed agent, but demand “proofs in due form, with copies of bills of goods purchased, or other authentic evidence of the amount of goods on hand.” But, as before remarked, it is a pregnant fact which cannot escape observation, that after the attorney for Cohen, in the correspondence referred to, had explained that it was impossible to furnish these copies, because all the books and papers of Cohen had been consumed by the same fire which destroyed the goods insured, the agents never,pointed out (though pressed to do so) any additional proof, which would be satisfactory; but afterwards simply insisted that the proofs must be furnished by Cohen, and not by' Colinsby, the agent. It was to this state of facts, disclosed by this correspondence, that the 2d instruction asked by the plaintiff, pointed. The whole correspondence was before the jury as evidence. It was for them to consider and weigh it, along with the other facts of the case.
"W"e think the plain meaning and scope of the 2nd •instruction was simply this: That after having furnished the preliminary proofs in the shape of the specification of loss verified by the oath of the plaintiff and the certificate of the justice, if, when called upon by the plaintiff to state whether ány farther proof was required, the defendants failed to make any requirement for farther proof, or to make any objection to the sufficiency of the proof, then they must be- regarded as having waived their right to demand a more particular •specification of their loss.
"We think when this instruction is taken in connec *324 tion with those which preceded, it contains no error. Its correctness will be more clearly vindicated when we consider the terms and conditions of the policy upon which this action is founded. We find this provision pointing out what is to be done by the insured before the policy “ shall be deemed payable; ” and this refers to what is known, in the language of insurance policies, as “preliminary proofs.” “All persons insured by this Company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the Company, and as soon after as possible, to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation; they shall also declare on oath whether any and what other insurance has been made on the same property; what wras the whole value of the subject insured, &c., &c. * * And also, if required, shall produce their books of account and other proper vouchers, and shall also produce certified copies of all bills and invoices, the originals of which have been lost, and exhibit the same for examination by any person named by the Company; and be examined on oath touching all questions relating to the claim; and until such proofs are furnished the loss shall not be deemed payable.” How, the evidence, upon which the instructions were based, clearly shows that, after the first letter rejecting the papers furnished by the reputed agent, as he is designated, and demanding “proofs in due form, with copies of bills of goods purchased,” &c., they not only fail to indicate what additional proofs are required, but they never, as it was their duty to do by the express terms of their policy, indicate any person by whom the examination of such proofs was to be made. It was not sufficient that they should require of the assured, copies of invoices, bills, &c., but they were bound to indicate some person before whom they should be exhibited. Having failed to do that, and having simply in *325 sisted that the proofs should be furnished by Cohen himself, and Cohen having furnished the account and verification of the loss, in accordance with the terms of ■ the policy, the defendants must be held to have “ waived their right to demand a more particular specification of the loss.” And there was no error in the court so instructing the jury, if they believed the supposed state-of facts.
Good faith and fair dealing is of the very essence of the contract of insurance; and where the company puts its refusal to pay upon the ground of a defect in the preliminary proofs, they ought to point out what the defect is—what is necessary to be supplied so as to give the insured the opportunity to supply what is required. Failure to do this, or their silence when called upon, will be held to be a waiver of such defect in the preliminary proofs. Angel oh Insurance, § 245; Ætna Fire Ins. Co. v. Tyler, 16 Wend. R. 385; Burnstead v. The Dividend Mutual Ins. Co., 2 Kern. R. 81; Turley v. North Amer. Fire Ins. Co., 25 Wend. R. 374; Id. 379. And so as in the case before us, where the Company has the right, by the express terms of the policy, to call for the production of copies of bills, invoices, &c., where the originals have been lost, before a person to be named by them, and they fail to name such person, the Company will be held to have waived their right to require their production ás a part of their preliminary proof.
"We are therefore of opinion that there was no error in the court saying that a given state of facts, set forth in the instructions, if found by the jury to be true, constituted a waiver. It is for the jury to find the facts, but what state of facts constitutes a waiver is a question of law for the court.
Another objection to the second instruction given at the instance of the plaintiff, urged by the counsel for the appellant, is, that it submits to the jury a question *326 of law. The language of the instruction being “then their right, under their policy, if any, to demand,” &c.,. it is insisted that the court left it to the jury to determine the question whether they had any right, under their policy, to demand a more particular specification of loss. We do not think this language is obnoxious to the criticism of the learned counsel. Fairly interpreted, it means the same thing as if the court had said: “then the right, under their policy, admitting they had such right, to demand,” &c. This, we think, is its-plain meaning, and that the jury must have so understood it.
As to the third and fourth instructions, we thinlc they are substantially correct, and we are of opinion,, upon the whole case, that the judgment of the Circuit-court of the city of Richmond should be affirmed.
Judgment affirmed.