# CHARLESTON.

Schwenck, Trustee, v. Hess *et al.*
and
Bank of Mannington v. Hess *et al.*

Submitted April 22, 1919. Decided April 29, 1919.

1. Equity—*Submission and Consideration of Cause—Continuance for Further Testimony.*

   Though a cause may have been submitted and considered, and a decree indicated, but before final entry of the decree the court is of opinion that though inadvertence under a misapprehension of the law, the issues involved have not been sufficiently or properly developed by the evidence to enable the court to do justice between the parties, it may without committing reversible error continue the cause with leave to the parties to take further testimony. (p. 115).

2. Fraudulent Conveyance—*Conveyance to Wife—Indebtedness of Husband—Rights of Creditors.*

Where a wife in good faith and without fraud on her part or knowledge of fraud or fraudulent intent on his part purchases the interests of her husband in lands owned by them jointly, the gift to them of her father and mother, and pays him therefor in cash or its equivalent out of her own separate estate an adequate consideration, the same will not three or four years thereafter at the suit of his creditors be set aside as fraudulent and void, although some of the debts of the husband represented by plaintiff were then outstanding. (p. 117).

3. Same—*Inadequacy of Price—Fraud.*

In such cases mere inadequacy of the price is not sufficient to avoid a deed, nor is it sufficient to impute a fraud on the part of the wife, although her husband be insolvent, unless the price paid is so inadequate as to shock the moral sense and the conscience of a court of equity. (p. 118).

Appeal from Circuit Court, Marion County.

Bill by Lawrence S. Schwenck, trustee, etc., against Ambrose D. Hess, Malissa A. Hess, and others, consolidated with bill by Bank of Mannington against the same defendants. Decree for plaintiff in each case, and Malissa A. Hess, defendant in each case, appeals.

*Reversed, and bills dismissed.*

*W. M. Hess,* for appellant.
*L. S. Schwenck,* for appellee.

Miller, President:

These causes were consolidated and disposed of as one suit. From the decree below the defendant Malissa A. Hess has appealed.

The bill in each case was filed at the February Rules, 1915. Plaintiff in the first case is trustee in bankruptcy of Hess and Sturm, partners as Hess & Sturm, and as individuals. It is alleged that Hess & Sturm, as partners, and Hess individually, were adjudged bankrupt October 22, 1913, and that on November 22, following, plaintiff was duly elected and qualified trustee in bankruptcy; that on November 15, 1913, said Sturm was also adjudged a bankrupt; and that on December 10, following, plaintiff was elected trustee in bankruptcy of his estate.

The plaintiff bank in the second of said suits sues as a creditor of Hess & Sturm, their claim, as alleged, being represented by three notes dated August 24, 1913, payable three months after date. for the sum of $925.00, with interest from November 24, 1913, in which notes. the bill alleges, there is included a note dated August 8, 1905, payable three months after date, which was renewed on November 8, 1905, and from time to time thereafter until December 30, 1910, when it was renewed for $725.00, and that this note was renewed from time to time until April 24, 1913, when the makers obtained a new loan from plaintiff of $200.00, thereby increasing their indebtedness to plaintiff to $925.00.

The object of both suits, so far as the present controversy is concerned, was the same, namely, to set aside as voluntary, fraudulent and void as against the creditors of Hess, and especially those existing prior thereto, two deeds, each dated March 24, 1910, the first from Hess and Malissa A., his wife, to John A. Sandy, the second from Sandy to Malissa A. Hess, each for the purported consideration of nine hundred and thirteen dollars as recited therein, covering the same four several tracts of land, described by metes and bounds as containing respectively 7½ acres, 21 acres and 59 poles, 37 acres, and 15 acres, the same land which had theretofore been conveyed to the said Hess and wife by Rezin J. Martin and wife, respectively the father and mother of said Malissa A. Hess, the first three tracts by deed dated November 22, 1892, the fourth by deed dated February 22, 1893, the Pittsburgh Coal under this land, the deeds recite, having prior thereto been sold and thereby reserved.

The answer of Malissa A. Hess in each case denies all the material allegations of the bills affecting her rights and title to said lands; denies that the deed from her husband through said Sandy was voluntary, fraudulent and without adequate consideration, but that on the contrary she paid for her husband's interest therein out of her own separate estate and funds a full and adequate consideration therefor, without fraud or fraudulent intent on her part, or knowledge of such fraud on the part of anyone. She admits that prior to the

deed to her of March 24, 1910, her husband was the owner
of a half undivided interest in the fifteen acre tract, but says
that as to the other tracts, they were conveyed to her and him
as aforesaid by her father and mother. and to be in full of
their interest in her father's estate, and subject to certain
reservations in mineral and mining rights, and also upon the
condition that: "If Flora V. Hess and Louie Bell Hess, the
daughters of said Ambrose D. Hess and Malissa A. Hess,
should survive one of their parents and any of the above
property has not been sold by said parents by mutual agree-
ment of both of them as hereinafter stated then one half of
whatever of said property remains unsold shall fall or descend
to them absolutely and in fee simple, and in case said chil-
dren shall survive both of their parents then all of such un-
sold property shall descend to them, or if only one of the
said children survive one or both of her parents she is to
receive what both would have received had both been living.
Nothing in this writing, however, is to be construed so as to
prevent the said Ambrose D. Hess and the said Malissa A
Hess from selling and conveying away any part or all of
the aforesaid properties providing such sale or sales is or
are the free act or acts of both of them and not one alone."
So that, as respondent alleges. said Ambrose D. Hess did
not at any time own an undivided half interest in said three
tracts in fee; that strictly construed he never owned nor was
able to convey more than a life interest in the undivided half
interest in said three tracts; that prior to respondent's pur-
chase thereof. her husband had been endeavoring to sell his
interest therein to other persons: and that because said land
had constituted the home place and had been so conveyed to
her by her father, and she did not want said lands or her
husband's interest therein to pass out of the family and into
the hands of strangers, she was induced to purchase the same
and did so, paying as she truly believed, considering the
character of the interests of her husband therein and the
burden thereon, the full value thereof as aforesaid.

Respondent further answered that before the purchase of
said interests, she was informed by said Sandy and others
connected with Hess & Sturm that said firm was solvent, was

in good shape, with assets above liabilities, and that she had no different information or knowledge of the affairs of said firm until more than three years after her purchase of said lands, when said firm and the individual members thereof were adjudged bankrupts.

On the bills, answers and proof taken the court in its final decree, of which, on motion of plaintiff's counsel, the written opinion of the court was made a part, finds as facts that Malissa A. Hess did all she could to inform herself as to the condition of said firm before purchasing her husband's interest in said lands; that said firm was probably solvent; that she acted in good faith, paid the consideration therefor, nine hundred and thirteen dollars, out of her individual money and separate estate, and was guilty of no fraud or fraudulent intent; but the court was of opinion to set aside said deeds upon the ground that the alleged interests of Ambrose D. Hess in said lands were conveyed to her to hinder, delay and defraud his creditors, especially the Bank of Mannington.

Preliminary to the consideration of the main issues presented, we will dispose of a question raised by cross-assignment of errors, namely, whether the court below, as claimed, abused its discretion on May 11, 1917, after the cause had been submitted on pleadings had and proofs taken up to that time, and had announced its opinion and authorized a decree to be drawn in accordance therewith granting relief to plaintiff but before actual entry of the decree, in sustaining defendants' motion to continue and allow them to take additional evidence? We cannot say on the record that there was abuse of discretion therein. Counsel in charge of defendants' side of the cause does not appear to have thoroughly comprehended the burden cast upon his clients in cases of this kind and had not developed fully the evidence on defenses interposed by defendants. Likely the court was of opinion that defendants' rights and interests ought not to be lost or prejudiced by the lapses of counsel. We do not say that the ignorance or omissions of counsel constitute good grounds for delay, but we are not disposed to hold in this case upon the facts then before the court that there was any abuse of its

discretion in relation to continuances. As already observed the court had not then entered its decree. Of the cases cited and relied on, *Marshall* v *Lumber Co.*, 76 W. Va. 531, was upon a bill of review. The proposition in that case relied on here, is that to maintain such a bill on the ground of after discovered evidence, it must appear that due diligence was observed on the former hearing. That proposition has little, if any, application here, for the object of such a bill is to reverse a decree already entered. The other case cited. *Post* v. *Carr*, 42 W. Va 72, involved the right of a defendant in a default judgment to set it aside, pursuant to section 46, chapter 125 of the Code, after an order of inquiry of damages had been duly executed. This case is also without application to the question here presented. When a judgment or decree has been already entered up in court, these cases hold that good cause must be shown for setting it aside. If the motion to continue had been overruled and defendant was complaining, a different question might be presented. In the case here the result was likely the same as if no continuance had been granted, for the final decree was in favor of plaintiffs. The only advantage which could have accrued to plaintiffs on the final hearing below or here on appeal would be to limit the court to the evidence in the cause prior to the continuance. In *Brooks* v. *Commonwealth*, 2 Rob. 845, a criminal case, continued in the absence of the prisoner, and without his consent, it was said that, "If the error be in continuing the case improperly, the only effect of it is the delay of the case: It is not a discontinuance; nor could it be a good reason for setting aside a judgment at a subsequent term, when a full and fair trial had been given to the prisoner." Moreover, it is not only within the discretion, but frequently it is the duty of the court seeing that a case has not been properly developed by the evidence to enable it to do justice between the parties, and it appears that one or both of them have through inadvertence under a misapprehension of the law failed properly to develop the facts upon which their rights depend, to give the opportunity to do so; indeed it has been regarded reversible error not to pursue this course. *Cook* v. *Raleigh Lumber Co.*, 74 W. Va. 503;

*La Belle Iron Works* v. *Quarter Savings Bank, Id.* 569; *Peabody Ins. Co.* v. *Wilson,* 29 W. Va. 528. Wherefore we are unable to find reversible error in the decree on the ground of the continuance of the cause.

On the merits of the controversy the appellant complains that neither upon the ground of inadequacy of price nor upon any of the grounds alleged, was the court warranted in setting aside the deeds of March 24, 1910. As we have already observed, the circuit court found as facts that the deeds were not voluntary, nor fraudulent so far as appellant is concerned, but on the contrary that Mrs. Hess acted in good faith, without fraud, and that she paid a valid, though as the court found inadequate, price for the land. We have read and considered the evidence on both sides with care and consideration, and we are of opinion that all the conclusions and findings of fact by the circuit court except on the question of inadequacy of consideration are well founded in the evidence. Before entering into the transaction with her husband for his interest in the common property, Mrs. Hess acted honestly, made inquiry and, as was said by the lower court in its opinion, if she left anything undone to properly inform herself, it was not disclosed by the record. The evidence need not be detailed, but it is overwhelming that the money paid by Mrs. Hess to her husband was actually paid and was her money. It is proven by her and the cashier that she had at that time a certificate of deposit in a bank, which with interest then amounted to $912.21, which was endorsed by her and turned over to her husband; that the firm of Hess & Sturm were then solvent and continued to do business for more than three years; and that the plaintiff bank not only renewed notes of the firm thereafter, but actually allowed them to increase their indebtedness. Where is the fraud? The circuit court found none on the part of the appellant. And on what ground can fraud be imputed to Ambrose D. Hess? The evidence shows that at the time of the transaction one of the creditors of Hess & Sturm, to whom they owed $2000.00, needed his money and called for it, and that every dollar realized by Hess from the sale of his interests in said lands together with money raised in some way by Sturm,

the other partner, was turned over to this creditor, thereby discharging the debt, and necessarily reducing the indebtedness of the firm, then reported to be six to seven thousand dollars, to four or five thousand dollars; and the evidence is that the assets then amounted to eight thousand dollars. Not a dollar of the money was misdirected; if anything wrong was done, it was the preference given to the creditor whose debt was then paid off, but this did not amount to fraud. We decided in *Stuart, Admr.* v. *Neeley, Admr.* 50 W. Va. 508, that a conveyance made by father to daughter in consideration of past services would not be set aside at the suit of the creditors as a preference unless brought within the time prescribed by the statute, nor at all unless the price paid was inadequate, or the deed was made to hinder, delay and defraud creditors. The case here presented is not one of preference, but an out and out purchase for a money consideration paid down, without notice of any fraudulent intent on the part of the seller. Every condition necessary in cases of alleged fraudulent conveyances, to support the deeds has been met by the proof, unless it be upon the question of inadequacy of price, to which we will presently direct our inquiry. As found by the court, the appellant acted in good faith, as interpreted by a long line of the decisions of this court, cited and relied on by appellees, the last one cited being *Philippi Plaining Mill Co.* v. *Cross,* 75 W. Va. 303.

But was the consideration, nine hundred and thirteen dollars, inadequate in a sense justifying the court in setting aside the deeds? Inadequacy of price alone is not ground for setting aside a deed at the suit of a creditor. It is, however, evidence tending to show fraud and implicating the grantee therein. We decided in *Bierne* v. *Ray,* 37 W. Va. 571. and other cases. that mere proof of inadequacy of price is not sufficient to implicate the vendee in the fraudulent intent, and unless so gross as to shock the moral sense, does not amount to proof of fraud. *Blubaugh* v. *Loomis,* 48 W. Va. 666. 682 and cases cited. And we find decisions holding that mere inadequacy of consideration in conveyances by husband to wife will not of itself render the conveyance fraudulently made as to creditors, even though the husband be

insolvent at the time.  *Tebbs* v. *Lee,* 76 Va. 744; *Motley* v. *Sawyer,* 38 Me. 68; *Hawkinsville Bank* v. *Walker,* 99 Ga. 242.  And in the New Jersey case of *Faitoute* v. *Sayre,* 28 Atl. 711, it was decided that even great inadequacy of consideration will not render a conveyance fraudulent when the husband is but little in debt.  And in Indiana it was held that although the consideration for a conveyance may be grossly inadequate, yet if the wife have no notice of her husband's fraudulent purpose, it will be set aside upon such conditions as will protect her actual interests in the property. *First National Bank* v. *Smith,* 149 Ind. 443.  Gross inadequacy of course is evidence of fraudulent intent.  *Livesay's Ex'r.* v *Beard,* 22 W. Va. 585.

In the case before us what is the evidence on the adequacy or inadequacy of the consideration?  In considering the evidence on this subject we must keep in mind that the several tracts conveyed constituted but a comparatively small farm, mostly hill land, and that Hess' right was an undivided interest therein; that the main seam of coal with mining rights had been previously conveyed; that there was one gas well on the tract, yielding $300.00 per year payable quarterly, which had declined and the lessees were appealing to the lessors for a reduction of the rental, and that the well was liable to become extinct and the income from it cut off at any time; that Hess had been endeavoring to sell his interest in the land to strangers at the same price paid him by his wife; that the deed to them for three of the tracts likely created in them an estate by the entirety, and in him a life estate only, as contended by appellant.  With all these limitations on his power of alienation, who can say that the consideration paid by Mrs. Hess was inadequate?  What would anybody else have given for Hess' interests in those tracts? What would have been an adequate price for the property so incumbered?  Defendants' witnesses say appellant paid full value, practically one thousand dollars, or nearly twenty-five dollars per acre; and considering the limitation on Hess' rights, the price ought to be regarded at even a greater rate. None of the witnesses for plaintiff, whose estimates ranged from thirty-five to sixty dollars per acre, took into considera-

'tion fully the nature of Hess' interests in the land. Their testimony is based on a full fee simple title in all the tracts, 'unincumbered by any limitations, excepting the existing oil and coal rights. Plaintiffs' witnesses are as far apart as to the value per acre as the lowest of their estimates is from the estimates of defendants' witnesses.

For the foregoing reasons we are of opinion that the decree below ought to be reversed and both bills wholly dismissed with costs to appellant here and in the lower court by her incurred. So it will be adjudged.

*Reversed and bills dismissed.*