WILLIAM C. ATWATER & COMPANY, *Inc. v.* FALL RIVER POCAHONTAS COLLIERIES COMPANY *et al.*

(No. 7967)

Submitted October 30, 1934.   Decided December 22, 1934.

*Cocke, Hazelgrove & Shackelford* and *S. D. Stokes,* for appellant.

*Greever & Gillespie* and *Crockett, Tucker & Tutwiler,* for appellees Wm. C. Atwater & Co., Inc., Fall River Pocahontas Collieries Co., and C. B. Smith.

LITZ, JUDGE:

The purpose of the bill in this case is to enjoin the sale of personal property under a distress warrant and to obtain the sale thereof under a chattel mortgage.

On May 1, 1901, Tug River Coal Land Company, predecessor in title of the defendant, Bankers Pocahontas Coal Company, leased to Cambridge Coal & Coke Company a tract of 808 acres of land in McDowell County for coal mining purposes. December 27, 1902, the Land Company entered into a new contract of lease with L. H. Vaughan who had acquired the rights of the Cambridge Company, providing for a royalty of eight cents per ton for coal mined and a minimum annual rental of $5,000.00 for a term of thirty years. On February 1, 1903, L. H. Vaughan assigned his rights under his lease to Vaughan Coal Company. The Vaughan Company operated the property until November 25, 1916, when it assigned its rights therein to Fall River Pocahontas Collieries Company in consideration of the Fall River Company agreeing to pay the royalties under the lease to the lessor, the taxes on the land and seven cents per ton for all coal mined and a minimum annual royalty of $4,375.00 to the Vaughan Company. The Fall River Company, a subsidiary corporation of plaintiff, William C. Atwater & Company, Inc., was organized a short while before taking over the lease from the Vaughan Company, with a paid in capital of $90,000.00. The Fall River Company, during its operation under the lease, in April, 1926, distributed among its stockholders a 20% dividend, and in June, following, reduced its capital stock from $90,000.00 to $30,000.00 and distributed the difference in cash to the stockholders. This left it without any working capital and necessitated the immediate and continued borrowing of money from the Atwater Company to keep it going. On November 26, 1927, the Fall River Company executed its note to the Atwater Company in the sum of $64,-798.77 to cover previous loans. On January 3, 1928, the Fall River Company executed a chattel mortgage on all of its personal property to secure the payment of said

note. On June 3, 1929, the Vaughan Company caused a distress warrant to be issued and levied upon the personal property of the Fall River Company for delinquent royalties due the former by the latter in the sum of $3,-869.95. On June 10th, following, the Fall River Company notified the Bankers Company and Vaughan Company that it had permanently ceased the mining of coal from the premises because the minable coal therein had been exhausted. This suit was brought to July Rules, 1929, by the Atwater Company against the Fall River Company, the Bankers Company and the Vaughan Company to enforce the lien of the chattel mortgage and to enjoin the Vaughan Company from further proceeding under its distress warrant. The Bankers Company filed its answer to the bill of complaint August 2, 1929, charging damages to the premises by improper mining and an unauthorized abandonment of operations, and praying, among other things, that the Atwater Company be enjoined from enforcing its chattel mortgage; that the Vaughan Company be restrained from further proceeding under its distress warrant; and that the cause be referred to a commissioner for the purpose of ascertaining the liens, in the order of priority, against the property of the Fall River Company. On August 2, 1929, the court entered a provisional order, enjoining the Atwater Company from enforcing its mortgage and restraining the Vaughan Company from further proceeding under its distress warrant. Upon a reference, the commissioner reported, among other liens against the property of the Fall River Company, royalties due the Bankers Company and the Vaughan Company for coal mined and minimum royalties during the remaining period of the lease, and for taxes paid by the Bankers Company on the account of the Fall River Company. The Vaughan Company, in its several answers, in the nature of cross-bills, seeks to hold the Atwater Company responsible for the debts of the Fall River Company, under the instrumentality rule, and to require the stockholders of the Fall River Company to repay so much of the assets of the corporation distributed to them in 1926 as may be neces-

·sary to· satisfy its debts other than the debt to the Atwater Company now amounting to $76,812.71. The trial chancellor confirmed the report of the commissioner and refused· the special relief sought by the Vaughan Company.

Appealing from the decree of the circuit court, the Vaughan Coal Company assigns error to the rulings therein denying the prayers of its cross-bills for special relief. The Fall River Company cross-assigns error to ·the ruling of the· circuit court confirming the report of the commissioner, on the grounds that it was not liable for minimum royalties after ceasing operations under the lease, and that, if it was so liable, the commissioner had erred in determining the amounts thereof. We are of opinion that the case has not been sufficiently developed upon any one of the three issues raised by appellant and Fall River Company. It does not satisfactorily appear whether or not there is any minable coal on the premises. The Fall River Company adduced evidence of the physical value of its property at the time of reducing its capital stock, but did not show by direct proof the actual value thereof nor the then condition of its business, whether prosperous or otherwise, etc. " * * * the surplus, if any, ·which a corporation may pay to its stockholders upon reducing its capital stock, must in every case be ascertained, and depends upon the result of ·an examination into its affairs, and not upon the difference between the original amount of capital stock and the reduced amount." Fletcher, Cyc. Corporations, Vol. 11, page 271. "When the record of· a chancery cause discloses lack of development of the merits of vital issues in the cause and strong probability of the existence of evidence decisive thereof, the decree is reversed and the cause remanded for further proceedings." *Lumber Co.* v. *Turk,* 75 W. Va. 26, 83 S. E. 83.

The decree is, therefore, reversed, and the cause remanded.

*Reversed and remanded.*