DETROIT FIDELITY & SURETY COMPANY *v.* ISAIAH KIDD *et al.*

(Nos. 8142 and 8142A)

Submitted October 8, 1935. Decided October 22, 1935.

*Steptoe & Johnson* and *Stanley C. Morris,* for appellant United States Fidelity & Guaranty Company.

*J. Q. Hutchinson,* for appellant Isaiah Kidd.

*Geo. R. C. Wiles,* for appellee National Surety Company.

HATCHER, JUDGE:

Appellants, United States Fidelity & Guaranty Company (hereinafter called Fidelity Company) and Isaiah Kidd, recovered in the circuit court (on cross bills) a judgment for the principal sum of $14,807.10 against appellees, Aubrey O. Smith, Detroit Fidelity & Surety Company, and National Surety Company (hereinafter called Detroit Company and National Company, respectively). Appeal No. 8142 is that of Fidelity Company; appeal No. 8142A is that of Kidd, who joins in the appeal of Fidelity Company. Appellants seek to increase their judgment to $29,463.64.

The pleadings are not questioned and need not be detailed. The material facts follow.

Kidd was sheriff of Raleigh County for the term of January 1, 1925, to January 1, 1929, and Fidelity Company was his

official surety. Smith was cashier for Kidd during his term, and as such had full charge of all the fiscal records and the finances of the office. Smith executed two bonds directly to Kidd, with the National Company surety on one and the Detroit Company surety on the other. The bonds recited that Smith had been appointed cashier for Kidd's term, and were conditioned upon Smith's faithful performance of all duties of the office and his payment and accounting for all funds coming into his hands by virtue of the office.

After the expiration of Kidd's term, to-wit, in 1932, the county court recovered a judgment of $29,463.64 against him and his surety, Fidelity Company, for shortage in his accounts, which the surety paid. Attributing the shortage to his cashier, Kidd and his surety seek in this proceeding to recover all of the above payment from Smith and his sureties. The difference between that payment and the recovery herein is $14,656.54, consisting of two items, one of $248.49 and the other of $14,408.05. The first item is composed of the interest paid by the sheriff on certain county orders, improperly marked "no funds" by the cashier, when in fact funds were available to pay the orders. The second item is composed of license fees collected by Jackson Smith, clerk of the county court of Raleigh County, under a local custom prevailing at that time. A. O. Smith, the sheriff's cashier, was the son and also the official bondsman of Jackson Smith. On January 6, 1927, the latter delivered to his son, as such cashier, his check in favor of the sheriff for the sum of $14,408.05, in purported payment of the fees. Jackson Smith did not then or ever afterward have in bank sufficient funds to meet the check. A. O. Smith was apprised of the condition of his father's bank account and never presented the check for payment. Nevertheless he personally entered the check on the sheriff's books as a cash payment, settled the fees with the Auditor out of the sheriff's funds, and until 1933 concealed from the sheriff the check and his own and his father's derelictions in the matter.

The Constitution, Article IX, section 3, requires that "the duties of the office of sheriff, shall be performed by him in person, or under his superintendence." Counsel for National

Company contends that his client had the right to expect Sheriff Kidd to comply with this constitutional requirement; that he did not do so; and that his failure to supervise his official fiscal affairs should release the National Company from liability. Kidd testified without contradiction that the money paid into his office annually approximated $2,500,000; that no one man could attend to or "see to" the financial business of the office as well as to law enforcement and the other duties of the sheriff; and that after performing such other duties, he spent what time he could in the office and observed as much of the financial business, in the language of the witness, "as was practicable for me to see." The Constitution does not rank any one duty of the sheriff above another and does not contemplate a personal performance or supervision of his duties which is humanly impossible. We are of opinion that under the circumstances, Kidd's division of official work did not violate the constitutional mandate particularly in view of his testimony that he "saw to" as much of his fiscal business *as was practicable for him to do.*

Counsel further contends that the duties of general fiscal officer exercised by A. O. Smith under Kidd are much broader than the ordinary duties of a cashier; that National Company was not apprised of those broader duties when it signed Smith's bond as cashier and for that reason should be released from liability. Whatever the merits of this contention on other matters, it does not apply to the two items under consideration, since Smith's authority merely as cashier empowered him to handle those items.

Counsel stresses the fact that A. O. Smith did not misappropriate any of the sheriff's funds which actually came into his hands. His official bond, however, guaranteed that he would faithfully perform the other duties of his office as well as account for money. Any neglect of duty, or breach of duty by him that brought loss to Kidd, rendered A. O. Smith responsible therefor on his bond. See generally Mechem Agency (2d Ed.), secs. 1187-8-9, 1207, 1291; 2 C. J., subject Agency, secs. 353-4, 380-1; *Newcomb* v. *Brooks,* 16 W. Va. 32, 58.

Kidd was compelled to lose the item of $248.49. There is

no contention, even, that this loss was not occasioned by the failure of his cashier to use ordinary care in the performance of his duties. It was therefore error not to permit a recovery herein of that item.

The position of the learned trial court on the item of $14,408.05 follows:

"This amount had been collected by Jackson Smith as the agent of Kidd and therefore he was just as liable to account for this sum as if it had come into his hands. However, it never did come into his cashier's hands, and the fact that a check was received, which was never paid, would not change or alter the liability of Kidd. In other words, before Kidd is entitled to recover for this false entry made on the books of Aubrey O. Smith, he must have sustained a loss by reason thereof. It is not shown that Kidd has sustained any loss by reason of the bad check or the false entry. Kidd's liability to the state for license fees collected by Jackson Smith was neither diminished nor increased by reason of the taking of the check or making the false entry in regard thereto. He was liable for the license fees not because of the false record or the check, but because he had collected the same through his agent, Jackson Smith."

The legal status of the parties is correctly stated above; but certain facts on the question of Kidd's loss seemingly escaped attention. Jackson Smith was insolvent in 1933. How long he had been so does not appear. The question of Kidd's loss, however, may be properly determined, from conditions during 1927, the year of A. O. Smith's malfeasance. The record is silent on Jackson Smith's exact financial condition in that year and the years immediately following. A. O. Smith testified, however, that on January 6, 1927, when he accepted the check of Jackson Smith in payment of license fees ($14,048.05) due the sheriff, he "believed the check would be good within the next day or so." As both son and surety of Jackson Smith, it is a fair presumption that the witness was acquainted with his father's financial condition. If so, it would seem that Jackson Smith had resources at that time approximating, if not equal to, the face of the check. Had

A. O. Smith promptly performed his plain duty and disclosed the situation to Kidd, the inference follows that the latter could have salvaged some portion of the $14,048.05 out of Jackson Smith's shrinking fortunes. If A. O. Smith's failure of duty in this respect occasioned loss to his principal, he and his sureties are liable for that loss. Since the record demonstrates the probability of this loss but does not show its extent, the cause is remanded for further proceedings. *Lbr. Co.* v. *Turk,* 75 W. Va. 26, 83 S. E. 83; *Davis* v. *Coal Co.,* 109 W. Va. 769, 156 S. E. 183.

Therefore, the decree of the circuit court is affirmed as to its finding of $14,807.10 in favor of appellants; the decree is reversed as to its findings on the items of $248.49 and $14,408.05, and the cause is remanded for further development.

*Affirmed in part; reversed in part; remanded.*