THE FIRST NATIONAL BANK AT WILLIAMSON *v.* MAE
KING, *et al.*

(No. 8753)

Submitted May 9, 1939. Decided May 31, 1939.

*Hogg & Crawford,* for appellant.
*Bias & Bias,* for appellees.

MAXWELL, PRESIDENT:

The purpose of the suit is to set aside two certain deeds on the ground that they were executed to delay, hinder and defraud the plaintiff and other creditors of G. T. King, deceased.

The plaintiff appeals from a decree of September 15, 1937, denying relief and dismissing the bill.

Each of the deeds embraces only the residence property of G. T. King in the City of Williamson. The first conveyance was made by G. T. King and Mae King, his wife, to O. H. Sprinkle and Rachel Sprinkle, December 10, 1934, recorded in the office of the clerk of the county court of Mingo County, December 19, 1934. The second deed was made April 5, 1935, by O. H. Sprinkle and Rachel Sprinkle, his wife, to Mae King, proper recordation being made April 10, 1935. It is in evidence that at the time of the conveyances the property "had a value of not to exceed Three Thousand Five Hundred Dollars."

At the time of the first conveyance, G. T. King was indebted to the plaintiff on two separate notes, one for $1930.00, dated October 27, 1934, made by Bertie G. Farrar, and endorsed by W. R. Farrar and G. T. King; the other, for $750.00, dated July 27, 1934, executed by W. R. Farrar, as maker, and endorsed by G. T. King and J. W. Warnick.

The commissioner in chancery to whom the cause was referred, after taking evidence, reported to the court his finding "that these deeds were for a valuable consideration, and that they were not made with intent to hinder, delay and defraud the creditors of G. T. King, there being no circumstance or evidence to support the theory that these instruments were made with any intent to defraud, hinder or delay any creditor of the said G. T. King." The court overruled the plaintiff's exceptions to the commissioner's finding and decreed in accordance therewith. The chancellor's action in this particular was justified in the light of the evidence that at the time King and his wife conveyed the property to the Sprinkles, under a plan by which the latter were to reconvey to Mae

King, she was a *bona fide* creditor of her husband to the extent of at least Three Thousand Dollars.

The suit, as evidenced by both the original bill and the first and second amended bills, was based solely on allegations of fraudulent intent on the part of the Kings and the Sprinkles to defraud the creditors of G. T. King. The plaintiff invoked Code, 40-1-1, which declares void any deed made with intent to defraud creditors.

Inasmuch, however, as the record discloses that G. T. King was insolvent and the two conveyances operated unequivocally to create a preference in favor of Mae King as against other creditors of G. T. King, the question arises whether in this suit, relief may be granted the plaintiff on the basis that the property should be held by Mae King, not for her sole benefit, but for the benefit of herself and other creditors. The subject of transfers creating preferences is dealt with in Code, 40-1-5.

The matter of preferential transfer was not presented nor considered in the trial court except in a somewhat indirect manner. The final decree brought the cause on to be heard, *inter alia,* upon the argument of counsel, "including argument of counsel for plaintiff that the conveyance from the decedent to the defendant, Mae King, be set aside as preferential, if the Court be of opinion it was not fraudulent or was not made with intent to hinder and delay the plaintiff." In its decision the court adjudged: "And the court doth likewise overrule the contention of the plaintiff that the conveyance of the realty in question' to Mae King be set aside as a preferential payment." Nothing further appears in the record respecting the question of preference.

Inasmuch as the original and amended bills were framed on the hypothesis of actual fraud, without mention of preference, the defendant Mae King insists that neither the trial court nor the appellate court may properly consider the question of preference. In support of that position there is cited the case of *DeMoss* v. *McGee,* 66 W. Va. 441, 66 S. E. 525, wherein syllabus point two reads: "A bill by a creditor, under section 1, chapter

74, of the Code (present Code, 40-1-1), to impeach for actual fraud the deed of his insolvent debtor, but failing in that object, will not be treated as a bill under section 2, of said chapter (present Code, 40-1-5), to avoid such deed as a preference, and to have it declared a general assignment for the benefit of all creditors as provided thereby." In the opinion, the court said: "Appellant's counsel would have us reverse the decree on the theory that said deeds constituted voidable preferences by an insolvent debtor, under section 2, of chapter 74, of the Code (present Code, 40-1-5). Our answer to this proposition is that the bill was not filed under that section. To avoid such a deed as a voidable preference under that section a bill must be filed for that purpose, within the time thereby prescribed; otherwise the deed becomes validated by that very act."

Undoubtedly, on principle and under the case cited, a bill which attacks a conveyance solely on the ground of express fraud may not be treated as a bill to have the conveyance declared to be a preference, if the attack on the ground of fraud proves unsuccessful. There must, of course, be proper pleadings to sustain an adjudication of preference.

But what about amendment of pleadings in such circumstances? It is a general rule of equity procedure that pleadings may be amended to conform with the proof. *Floyd* v. *Duffy*, 68 W. Va. 339, 69 S. E. 993, 33 L. R. A. (N. S.) 883. And then, too, Code, 56-4-24, provides that "in any action, suit, motion or other proceeding, the court, if in its opinion substantial justice will be promoted thereby, may, at any time before final judgment or decree, and upon such terms as it may deem just, permit any pleading to be amended * * *." In the instant case, however, the situation is clouded by the fact that there was no request for leave to file a third amended bill bringing in the question of preference under Code, 40-1-5, and including a prayer for relief on that basis. Nevertheless, considering that the evidence plainly discloses a preference, what was the duty of the trial court

after it ascertained that there was no actual fraud? And what is the duty of this court on the review of the case? As to the circuit court's duty, in the light of the evidence disclosing a preference and of the fact that the point was specifically called to the chancellor's attention by counsel in argument on final submission, we are of opinion that instead of dismissing the plaintiff's bills there should have been continuance of the cause to afford the plaintiff an opportunity to file a third amended bill to conform with the proof, if the plaintiff desired to take such course. "If a good case, not sufficiently pleaded, be shown by the proof, the court should allow an amendment before dismissing plaintiff's bill." *Marshall* v. *Porter,* 73 W. Va. 258, 80 S. E. 350. Of like import: *Hertzog* v. *Riley,* 71 W. Va. 651.

At this point in the discussion the question arises whether such amendment would relate back to the time of the institution of the suit. If the amendment would not relate back in the instant case, it would be useless because under Code, 40-1-5, a bill attacking a conveyance as a preference must be filed within four months after recordation. If, on the other hand, such amended bill would be operative as of the institution of the suit, it would be within the statutory period inasmuch as the suit was actually instituted within four months after the recordation of the deed from G. T. King and Mae King to the Sprinkles.

In the recently decided divorce case of *Gray* v. *Gray,* 120 W. Va. 498, 199 S. E. 361, we held with reference to the amendment of a bill in chancery that "alterations or additions to its averments which lay a new ground for equitable relief constitute the commencement of a new suit and require the service of further process or its equivalent." In that case we recognized that where the cause of action under an amended bill remains in substance the same as in the original, there is no departure and the amended bill will relate back to the institution of the suit, and process on such amended bill is not necessary. The holding in the *Gray* case that there had

been therein a departure in pleading lay in the fact that whereas in the original bill the plaintiff charged the defendant with adultery only, the amended bill carried also the charge of habitual drunkenness.

In the *Gray* case there was a change in factual basis as ground for relief. At bar there would be no change of allegation respecting the facts. The change would be merely one of deduction from the facts. It is thus evident that the bringing into an amended bill of a charge of preference created by the insolvent debtor would not involve, within the rules of pleading, a departure from the original cause; that the cause of action in such amended bill would remain in substance the same as that set forth in the original bill. We reach this conclusion because whether the attacked conveyances were fraudulent in fact or merely operated to create a preference, the gravamen of the suit lies in the illegality of the grants, and the plaintiff's purpose in either aspect is to pursue the property for the satisfaction of indebtedness owing to the plaintiff at the time the debtor conveyed away the property. The difference between the two lines of attack is one in degree and not in kind. The practical difference between these two kinds of challenges of a conveyance made by a debtor is that if it be avoided as an actual fraud wherein the grantee participated, the latter is eliminated from any benefit under the conveyance. *Kanawha Valley Bank* v. *Wilson,* 25 W. Va. 242; 12 Ruling Case Law, p. 640. But if the conveyance operated merely as a preference, the grantee would be left in position where he would share with other creditors of the insolvent grantor. So, we are of opinion that an amendment herein alleging insolvency of the debtor and a preference created by him would not be a vain thing, but would relate back to the institution of the suit.

Respecting our query above propounded as to the duty of this court under the circumstances presented by the record of this case, we answer that in our opinion we should take such course as would afford opportunity for further development of the case. Such was, in effect, the

action taken by this court in the cases of *Marshall* v. *Porter* and *Hertzog* v. *Riley, supra.* We have many cases involving remand for further development: *Taliaferro* v. *Gatewood,* 20 Va. 320, 6 Mun. 320; *Hunter* v. *Snyder's Ex'r.,* 11 W. Va. 198, 213; *Peabody Insurance Co.* v. *Wilson,* 29 W. Va. 528, 2 S. E. 888; *Burns Bros.* v. *Morrison,* 36 W. Va. 423, 15 S. E. 62; *Cook* v. *Lumber Co.,* 74 W. Va. 503, 507, 82 S. E. 327; *Frymier* v. *Railroad Co.,* 76 W. Va. 96, 99, 85 S. E. 26; *Woodrum Outfitting Co.* v. *Express Co.,* 90 W. Va. 161, 165, 110 S. E. 549; *Laas* v. *Lubic,* 101 W. Va. 546, 133 S. E. 142; *Campbell* v. *C. & O. Ry. Co.,* 111 W. Va. 358, 361, 163 S. E. 31; *Taylor* v. *McMillan Hospital,* 117 W. Va. 190, 192, 184 S. E. 852; *Adkins* v. *Indemnity Co.,* 117 W. Va. 541, 186 S. E. 302, all of which are actions at law; and *Wildell Lumber Co.* v. *Turk,* 75 W. Va. 26, 83 S. E. 83; *Williams* v. *Insurance Agency,* 75 W. Va. 494, 502, 84 S. E. 235, Ann. Cas. 1917A, 813; *Schwenck* v. *Hess,* 84 W. Va. 111, 116, 99 S. E. 255; *Harrison* v. *Harman,* 85 W. Va. 538, 545, 102 S. E. 224; *French* v. *Coal & Coke Co.,* 87 W. Va. 226, 230, 104 S. E. 554; *Ellis* v. *Hager,* 87 W. Va. 313, 104 S. E. 607; *Davis* v. *West Virginia Coal & Coke Co.,* 109 W. Va. 769, 156 S. E. 183; *Atwater & Company* v. *Collieries Company,* 115 W. Va. 745, 178 S. E. 73; *Detroit Fidelity & Surety Co.* v. *Kidd,* 116 W. Va. 511, 515, 182 S. E. 113; *Shipper* v. *Downey,* 117 W. Va. 64, 67, 183 S. E. 871; *Conservative Life Ins. Co.* v. *Bank,* 118 W. Va. 44, 48, 188 S. E. 755; *Shaw* v. *Berry,* 118 W. Va. 122, 127, 189 S. E. 302; *Tressler Coal Mining Co.* v. *Klefeld,* 119 W. Va. 567, 195 S. E. 202; *Hott* v. *Simons,* 120 W. Va. 134, 196 S. E. 561; *Nutter* v. *Kerby,* 120 W. Va. 532, 199 S. E. 455, all chancery causes. In almost all of these cases the remand to the trial court was for the purpose of affording opportunity to introduce some element of necessary proof which had been omitted in the development of the case. However in the three cases of *French* v. *Coal & Coke Co., Conservative Life Ins. Co.* v. *Bank,* and *Hott* v. *Simons, supra,* the court specifically included in the remand the privilege of amendment of pleadings. We think that the course followed by this court in those cases was in line with

that adopted in *Hertzog* v. *Riley* and *Marshall* v. *Porter*, *supra,* and that, in furtherance of justice such procedure should be adhered to where proper. As indicated by the numerous cases above cited on the subject of remand for further development, there has obtained for many years the practice of returning cases to the trial courts with leave for development of some matter of proof, where it reasonably appeared to the appellate court that such proof existed. With all the more reason, there should be remand for further development where the record contains the proof requisite for relief in equity, and the only difficulty arising is that the pleadings are of too narrow scope.

The point is made that the second amended bill involved a departure from the original cause of action because it impleaded different notes from the ones set forth in the original and first amended bills. The notes identified in the different bills are all renewals for the same original debts. Because of that fact, we are of opinion that the second amended bill involved no change of cause of action. Consequently, evidence taken before the filing of the last bill was properly considered in connection therewith.

In the light of the principles herein presented, we reverse the decree of September 15, 1937, and remand the case for further consideration and development.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

I regret to say it is my belief that the majority opinion in this case is renewing the procedural complications that were caused primarily by the discussion and holding concerning the right of complainants to amend a bill in the case of *Rees* v. *Coal Mining Co.,* 88 W. Va. 4, 10, 106 S. E. 247, 249.

The right to amend conferred by Code, 56-4-24, relates both to law actions and chancery causes and contains the following language: " * * * the court * * * may permit

any pleading to be amended * * * eliminating from a multifarious bill all but one of the equitable causes of action alleged, or changing the form *but not the cause of action,* * * * ." (Italics supplied.) Code, 40-1-5, extends the jurisdiction of chancery courts in this state to the ground of equitable relief therein originated, i. e., an insolvent's creation of a preference. Code, 40-1-1, applicable to a far broader field, is not restricted to insolvents, but applies to all debtors who do the enumerated acts "with intent to delay, hinder, or defraud creditors".

It is quite clear to my mind that in this case the time has passed during which plaintiff could complain of the conveyance made by King, and that made by his intermediary to Mrs. King, as constituting an interdicted preference. There is some similarity between the two sections last cited, but there is also what I regard as a basic difference.

I think the majority opinion clearly propounds the principle laid down in the case of *DeMoss* v. *McGee,* 66 W. Va. 441, 66 S. E. 525, when it says: "Undoubtedly, on principle and under the case cited, a bill which attacks a conveyance solely on the ground of express fraud may not be treated as a bill to have the conveyance declared to be a preference, if the attack on the ground of fraud proves unsuccessful. There must, of course, be proper pleadings to sustain an adjudication of preference." The citation of *Floyd* v. *Duffy,* 68 W. Va. 339, 69 S. E. 993, 33 L. R. A. (N. S.) 883, to sustain the general rule that pleadings may be amended to conform to the proof is quite applicable so far as it reaches. But in that case, the seventh syllabus point reads as follows: "The trial court may properly allow an amended bill to be filed, after the evidence taken has developed a state of facts, variant from those set up in the original bill, but not constituting a departure, as defined by the courts, *nor a new cause of action.*" (Italics supplied.)

I regret also that I cannot follow the reasoning of the majority opinion which treats the bill of complaint herein as setting up a good cause insufficiently pleaded. It

strikes me that the use of the term "preference" in that opinion results in suggesting as the basis for the relief sought an entirely different cause from the one pleaded. There is no ascertainable defect in the bill of complaint in either its form or substance with fraud as the gravamen of the relief sought. It is when the gravamen is altered and grounded on preference that a different statute comes into play, and equitable relief is sought on a fundamentally different basis. Code, 40-1-1, prescribes no time limit. Laches, of course, applies. Under Code, 40-1-5, there is a statutory period prescribed after the lapse of which a ground of relief ceases to exist, not simply becomes unenforceable.

The West Virginia cases concerning the consequence of departure in pleadings (incorrectly termed "amendments") have been to some extent reviewed in the Court's opinion in the case of *Gray* v. *Gray,* 120 W. Va. 498, 199 S. E. 361. The extent to which the court in the case last mentioned overruled the opinion in the case of *Rees* v. *Coal Mining Co.,* 88 W. Va. 4, 106 S. E. 247, I believe the majority opinion in this case renders futile.