# CHARLESTON.

John T. Davis *et als. v.* West Virginia Coal & Coke Company *et al.*

(No. 6628)

Submitted November 18, 1930. Decided December 9, 1930.

*Douglas W. Brown,* and *E. A. Bowers* and *D. H. Hill Arnold,* for appellants.

*Frank Cox, Sam T. Spears,* and *Fred O. Blue,* for appellees.

Litz, Judge:

The plaintiffs, John T. Davis, Hallie Davis Elkins, Arthur Lee, Grace Davis Lee and Davis Trust Company, a corporation, recovered judgment against the defendant, West Virginia Coal & Coke Company, a corporation, in the sum of $197,768.29, for dividends (with interest) on preferred stock held by them in the defendant corporation which they allege should have been declared and paid in 1917.

The West Virginia Coal & Coke Company was organized January 31, 1917, with an authorized capital stock of $14,-250,000, divided into 120,000 common shares and 22,500 preferred shares of the par value of $100.00 each. Its assets then consisted of about 125,000 acres of developed and undeveloped coal lands in Randolph, Barbour, Upshur, Lewis, Braxton, Gilmer, Harrison and Clay counties, and $1,800,-000.00 working capital. Ninety thousand (90,000) of the

common shares and twenty-one thousand six hundred and seventy-seven (21,677) shares of the preferred stock were issued. The balance of the common stock remained in the treasury subject to the right of the holders of the preferred to exchange it for common. The liabilities included $2,500,-000.00 in serial notes executed by the corporation, maturing in 1921 and the succeeding nine years. The plaintiffs received, in the distribution of the stock, 8,942 shares of common, and 21,677 shares of preferred, as follows: John T. Davis, 4,629 shares, Hallie Davis Elkins, 877 shares, Arthur Lee, 500 shares, Grace Davis Lee, 377 shares, and Davis Trust Company, 15,294 shares. They also acquired $70,710.00 of the serial notes. John T. Davis was elected and served as a director.

The charter of the corporation provides that the preferred stock shall be entitled to dividends at the rate of six per centum per annum, and no more, payable semi-annually on the first day of January and July of each year as and when declared by the board of directors, and, that no dividend shall be paid on the common stock for any semi-annual period unless the dividend on the preferred stock for such period and all accrued and unpaid dividends thereon, if any, shall have been paid or an amount sufficient therefor shall have been set aside for that purpose; that the dividends on preferred stock shall be cumulative from January 1, 1921, provided the accumulated dividends payable on such preferred stock on any dividend date (including the semi-annual installment then due) shall not exceed eighteen per cent. The charter also gives the directors the power, without the assent or vote of the stockholders, to fix the times for the declaration and payment of dividends; to fix and vary the amount to be reserved as working capital; to borrow money and execute and deliver bonds and notes and authorize and cause to be executed mortgages and liens upon all the property of the corporation or any part thereof and, from time to time, sell, assign, transfer, pledge, or otherwise dispose of any or all of its property; and to determine the use and disposition of any surplus or net proceeds over and above the capital stock paid in, and in their discretion to use and

apply any such surplus or accumulated profits in purchasing or acquiring the bonds or other obligations or the shares of capital stock of the corporation, to such an extent and in such manner and upon such terms as they shall deem expedient. The preferred stock certificates contain like provisions in respect to the payment of dividends. Section 39, chapter 53, Code 1923, provides that the board of directors of a corporation may, from time to time, declare dividends of so much of the net profits as they deem it prudent to divide.

At a meeting of the board of directors, July 11, 1917, the following resolution, seconded by John T. Davis, was adopted:

"Unanimously resolved, that the officers of the Company be and hereby are authorized and directed to purchase from Charles D. Norton, Syndicate Manager, under the Syndicate Agreement of March 31, 1917, at principal and accrued interest, $1,800,000 principal amount of Six Per Cent 4-10 Year Serial Notes of this Company outstanding under its agreement of February 1, 1917, with Bankers Trust Company, Trustee, made up of $257,100 principal amount each of a Series of A to F, inclusive, and $257,400 principal amount of Series G of such Notes; and when so purchased such Notes shall be cancelled and surrendered to Bankers Trust Company, Trustee, as retired under such Trust Agreement of February 1, 1917, and no notes shall be issued by this Company under such Trust Agreement in lieu of the Notes so purchased and cancelled." Pursuant to this resolution, $1,800,000.00 of the serial notes were purchased at par with working capital on or about August 1st, following. The other notes were later purchased at a discount by the company, as follows: $31,000.00 in 1917; $372,400.00 in 1918, and the remainder in subsequent years before maturity.

According to the company's balance sheet of December 31, 1917, for that year, as set forth in plaintiff's original bill, the earnings of the year amounted to $616,663.35. No dividends having been declared on the preferred stock for 1917, at a meeting of the board of directors on May 10, 1918, John T. Davis on behalf of himself and the other preferred stockholders, requested the declaration and payment thereof; but action was deferred.

At a meeting, June 27th, 1918, "the chairman reported that out of the earnings of the company for the year 1917, amounting to *$711,996.48,* the company had invested in improvements and betterments $383,306.56 and purchased, at par, $153,-000.00 principal amount of 4% Liberty Bonds and had retired $31,000.00 principal amount of outstanding notes of the company, and had paid taxes amounting to $42,799.78, leaving a balance of the earnings of 1917 of *$101,470.13,* which amount is now invested and employed in the business of the company."

"The Chairman also reported that the Treasurer had acquired the following notes of the Company:

| 1918 | Par Value | Cost |
|---|---|---|
| Jan. | 6000 @ 90¼ | 5415 |
| Feb. | | |
| March | 100000 @ 95 | 95,000 |
| April | 32000 @ 90¼ | 28,880 |
| | 85400 @ 90 | 76,860 |
| | 6000 @ 88 | 5,280 |
| May | 13000 @ 90 | 11,700 |
| | 100000 @ 95 | 95,000 |
| | 342,400 | 318,135 |

Upon motion duly made, seconded and unanimously carried it was

Resolved, that such purchases of notes be and they are hereby ratified, confirmed and approved."

At a meeting, July 10th, 1918, Davis again moved the declaration and payment of preferred dividends for 1917, but the motion, receiving no second was not considered. At the same meeting, however, a resolution was voted directing the payment of preferred dividends for the first half of 1918, amounting to $65,031.00. Preferred dividends were thereafter declared and paid to and including 1924. Common dividends amounting to $1,439,984.00 were also declared and paid during 1919, 1920, and 1921. Adopting the figures of the balance sheet of December 31, 1917 (set forth in plaintiff's original bill), for the earnings of that year, a tabula-

tion of the earnings, dividends and losses from 1917 to 1924, both inclusive, follows:

| | | |
|---|---|---|
| 1917 | Earnings to "Earned Surplus" | $ 616,623.35 |
| 1918 | Earnings to "Earned Surplus" | 470,171.42 |
| | | $1,086,794.77 |
| 1918 | Deduct two non-cumulative preferred dividends of 3% each from 1918 earnings | $ 130,062.00 |
| 1918 | December 31, Accumulated Earned Surplus Balance | $ 956,732.77 |
| 1919 | Earnings to "Earned Surplus" | 251,417.74 |
| | | $1,208,150.51 |
| 1919 | Deduct two non-cumulative preferred dividends of 3% each from 1919 earnings | 130,062.00 |
| | | $1,078,088.51 |
| 1919 | Deduct common dividends of 3% (allocated by resolution to 1918 earnings) | 269,997.00 |
| 1919 | December 31, Accumulated Earned Surplus Balance | $ 808,091.51 |
| 1920 | Earnings to "Earned Surplus" | $1,233,845.68 |
| | | $2,041,937.19 |
| 1920 | Deduct two non-cumulative preferred dividends of 3% each | 130,062.00 |
| | | $1,911,875.19 |
| 1920 | Deduct two common dividends of total of 9% | 809,991.00 |
| 1920 | December 31, Accumulated Earned Surplus Balance | $1,101,884.19 |
| 1921 | Earnings to "Earned Surplus" | 209,323.71 |
| | | $1,311,207.90 |

1921 Deduct two cumulative preferred divi-

dends of 3% each...................... 130,062.00

| | | |
|---|---|---|
| | | $1,181,145.90 |
| 1921 | Deduct two common dividends of 2% each | 359,996.00 |

| | | | |
|---|---|---|---|
| 1921 | December 31, Accumulated Earned Surplus Balance | $ | 821,149.90 |
| 1922 | Charge against "Earned Surplus" Balance 1922 Loss | | 39,430.32 |

| | | |
|---|---|---|
| | | $781,719.58 |
| 1922 | Deduct two cumulative preferred dividends of 3% each .......$ | 130,062.00 |

| | | |
|---|---|---|
| 1922 | December 31, Accumulated Earned Surplus Balance | 651,657.58 |
| 1923 | Earnings to "Earned Surplus" | 254,296.58 |

| | | |
|---|---|---|
| | | $ 905,954.16 |
| 1923 | Deduct one cumulative preferred dividend of 3% | 65,031.00 |

| | | | |
|---|---|---|---|
| 1923 | December 31, Accumulated Earned Surplus Balance | $ | 840,923.16 |
| 1924 | Loss | | 273,358.13 |

| | | |
|---|---|---|
| | | $ 567,565.03 |
| | Deduct three cumulative preferred dividends for 1924 and the second half of 1923, declared December 23, 1924, and paid in February, 1925 ...................... | 195,093.00 |

Balance Accumulated Earned Surplus....$ 372,472.03

It thus appears that the payment of cumulative preferred dividends for the second half of 1923 and 1924 (in which there was a substantial loss) reduced the accumulated earned surplus $244,151.32 below the earnings of 1917. The declaration of dividends is primarily for the determination of the directors, and bad faith or clear abuse of discretion on their part is

required to justify interference by a court of equity. "The mere fact that a corporation has surplus profits out of which a dividend might lawfully be declared is not of itself sufficient ground for a court of equity to compel the directors to make a dividend, for they have a right to use surplus profits to extend the business of the corporation, or to make improvements, and even to provide a surplus fund, if it is to the interests of the corporation to do so, and a court of equity will not interfere with or control their discretion in determining what the interests of the corporation require in this respect, unless there is a clear abuse of discretion. This is ordinarily true even in the case of preferred stock on which a dividend is required to be paid each year out of the net profits of the company, or where the statute requires the annual distribution by the corporation of the whole of its accumulated profits after settling off an amount required to be fixed by the stockholders as working capital." 6 Fletcher Cyclopedia Corporations, sec. 3556. "And the directors are clearly justified in using earnings for the purpose of making necessary repairs, paying debts, laying by for the creation of a reserve fund to repair, or to pay obligations not yet due, and the like, and the circumstances may be such as to justify improvements." Idem., sec. 3753.

Plaintiffs assert that the conduct of the directors in failing and refusing to declare preferred dividends for 1917 is arbitrary and constitutes a clear abuse of discretion. They further insist that the directors were also guilty of abuse of discretion in applying the working capital to the purchase of the serial notes before maturity. It is further charged that as the directors, other than John T. Davis, owned, or represented the owners of, most of the notes and common stock they were therefore interested in the payment of common dividends and the sale of the notes. The defendants reply that John T. Davis seconded and voted for the motion of July 11, 1917, authorizing the purchase of $1,800,000.00 of the serial notes, and that the earnings for 1917 which were not expended during that year for the necessary purposes of the company were required as working capital.

The defendants contend also that the payment of the cumulative preferred dividends for the second half of 1923 and

1924, which reduced the accumulated earned surplus $244,-151.32 below the earnings of 1917, was, in legal effect, made out of such earnings and should be treated as a payment of preferred dividends for that year. The plaintiffs deny the validity of this defense (not set up in the answer) and assert that it was not considered as an issue either in the taking of proof or at the hearing below. It may be, if as the defendants suggest John T. Davis was acting for his associates, as well as himself, in seconding and voting for the resolution of July 11, 1917, which authorized the purchase of the serial notes, plaintiffs could not now question the exercise of the authority so granted.

In view of the unsatisfactory state of the record upon these material questions and in the interest of justice to the litigants, without passing upon the merits, we reverse the decree and remand the cause for further development.

*Reversed and remanded.*